# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                        No. CR 19-1989 JB

ROBERT ALDERETE,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Urgent Motion for Release Due to Coronavirus Outbreak, filed April 8, 2020 (Doc. 44)("Motion").  The Court held a hearing on April 23, 2020.  See Clerk's Minutes at 1, filed April 23, 2020 (Doc. 49).  The primary issue is whether the Court should release Defendant Robert Alderete from detention at the Santa Fe County Adult Detention Center, because Alderete's health issues make him more vulnerable to serious illness should he contract the Coronavirus disease 2019 ("COVID-19").  The Court will deny Alderete's request for release, because: (i) the Court does not have the authority to release Alderete under 18 U.S.C. §§ 3142(f) and (i), because the Court did not originally issue Alderete's detention order; (ii) even if the Court had the authority to review Alderete's pretrial detention order under § 3142(f), the COVID-19 pandemic does not affect the Court's determination that there is no condition or combination of conditions that would assure Alderete's appearance and protect the community; and (iii) even if the Court had the authority to order temporary release under § 3142(i), COVID-19's speculative threat is neither a compelling reason for release nor is it specific to Alderete's circumstances.

## FINDINGS OF FACTS

The Court sets forth the facts as the Plaintiff United States of America alleges them in its Superseding Indictment, filed November 20, 2019 (Doc. 28)("Indictment"), and as the United States Probation Office ("USPO") describes them in the Pretrial Services Report, filed June 19, 2019 (Doc. 11)("Bail Report"), and in the Addendum to Bail Report, filed April 22, 2020 (Doc. 48)("Addendum"), bearing in mind that Alderete is presumed innocent of all charges, see Estelle v. Williams, 425 U.S. 501, 503 (1976)("The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." (citing Coffin v. United States, 156 U.S. 432, 453 (1895))). The Court recites the United States' version of the facts, because the high burden of proof placed on the United States necessitates that it has a cogent, internally consistent version of events,[1] and not out of any predisposition to believe the United States' side of the story. See In re Winship, 397 U.S. 358, 365 (1970)("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). The Court also relies on publicly available information about the COVID-19 outbreak.

1.      Alderete was born in Albuquerque, New Mexico, on August 10, 1976. See Bail Report at 1.

---

[1]The defendant in a criminal case, on the other hand, need not present a cogent theory of the case or propose a comprehensive factual story. He or she may sit back, attempt to poke holes in Plaintiff United States' theory of the case, and need not put on any case at all. See United States v. Wittig, No. 03-40142-JAR, 2005 WL 758606, at *4 (D. Kan. April 4, 2005)(Robinson, J.)("It is axiomatic that a defendant has a presumption of innocence, which means that a defendant need not present evidence, as the defendant has no burden of proof in a criminal case." (footnote omitted)).

2.      Alderete has lived in Albuquerque his entire life.  See Bail Report at 1.

3.      Alderete has one sibling, a sister, and Alderete's sister and parents reside in Albuquerque.  See Bail Report at 1.

4.      Alderete maintains regular contact with his immediate family members.  See Bail Report at 1.

5.      From 2008 to 2010, Alderete maintained a relationship with a woman; Alderete reports that he has a ten-year-old son from this relationship.  See Bail Report at 1.

6.      Since 2013, Alderete has maintained a relationship with a different woman.  See Bail Report at 1.

7.      Alderete and his son live with Alderete's father in Albuquerque.  See Bail Report at 1.

8.      Alderete obtained his G.E.D. in 1995 while incarcerated with the New Mexico Department of Corrections.  See Bail Report at 2.

9.      Alderete has been unemployed since 2018 and has no monthly income.  See Bail Report at 1-2.

10.     Alderete's parents financially support him.  See Bail Report at 2.

11.     Before 2018, Alderete was a laborer, but he suffered a hand injury two years ago while operating heavy machinery.  See Bail Report at 2.

12.     Alderete suffers from numbness in his hand and he has a limited range of motion. See Bail Report at 2.

13.     Alderete has an extensive criminal history and a record of failure to appear.  See Bail Report at 2.

14.     Alderete has been charged with criminal conduct twenty-five times, not including the current charges.  See Bail Report at 4-18.

15.     Alderete has a record of non-compliance with conditions of pretrial release, probation, and parole.  See Bail Report at 2.

16.     Alderete's criminal history is below.

| Date of Arrest | Charge/Court | Disposition |
|---|---|---|
| June 1, 1993<br>Age 16 | Aggravated Assault with a Deadly Weapon<br>County of Bernalillo, 2nd Judicial District Court, Albuquerque | Dismissed |
| March 25, 1994<br>Age 17 | Robbery; Conspiracy to Commit a Crime; Unlawful Taking of a Motor Vehicle<br>County of Bernalillo, 2nd Judicial District Court, Albuquerque | Refiled on March 31, 1994 |
| March 28, 1994<br>Age 17 | Unauthorized Graffiti on Personal/Real Property; Possession of Spray Paint | Dismissed per plea agreement |
| March 31, 1994<br>Age 17 | Robbery; Conspiracy to Commit a Crime; Unlawful Taking of a Motor Vehicle<br>2nd Judicial District Court of Bernalillo County, Albuquerque, New Mexico | Guilty as to all Counts<br>Alderete violated probation on September 14, 1995, April 3, 1998, and May 4, 1998 |
| October 3, 1994<br>Age 18 | Possession of Drug Paraphernalia<br>Court unknown | Unknown |
| June 13, 2003<br>Age 26 | Unlawful Taking of a Motor Vehicle; Embezzlement<br>County of Bernalillo, 2nd Judicial District Court, Albuquerque | Guilty and sentenced to 3 years custody plus 3 years probation and 2 years parole for unlawful taking of a motor vehicle<br>Prosecution did not pursue Embezzlement Count<br>Alderete violated probation on May 20, 2004 |
| July 15, 2003<br>Age 26 | Trafficking Controlled Substance (Possession with Intent to Distribute); Robbery; Conspiracy for Trafficking Controlled Substance with Intent to Distribute; Possess of Drug Paraphernalia; Possession of a Firearm/Destructive Device by a Felon | Guilty and sentenced to 9 years custody and 4 years probation for Trafficking Controlled Substance<br>Probation revoked on February 17, 2006, and December 13, 2006 |

| | | |
|---|---|---|
| | County of Bernalillo, 2nd Judicial District Court, Albuquerque | Alderete violated probation on July 23, 2007, and August 9, 2007 |
| January 29, 2004 Age 27 | Possession of Firearm; Destructive Device by a Felon; Concealing Identity County of Bernalillo, 2nd Judicial District Court, Albuquerque | Guilty as to Possession of Firearm/Destructive Device by a Felon Probation revoked on August 27, 2007 |
| June 27, 2004 Age 27 | Aggravated Battery Against a Household Member; Remove, Injure, Destroy Telephone Line Bernalillo County Metropolitan Court, Albuquerque | Dismissed |
| November 25, 2007 Age 31 | Criminal Trespass; Possession of Drug Paraphernalia Bernalillo County Metropolitan Court, Albuquerque | Unknown |
| December 6, 2007 Age 31 | Escape from Custody Release Program; Embezzlement County of Bernalillo, 2nd Judicial District Court, Albuquerque | Guilty and sentenced to 18 months custody plus 18 months supervised probation and 1 year parole for Escape from Custody Release Program Embezzlement Count dismissed Alderete violated probation on January 5, 2009 Probation revoked on February 23, 2009, and May 26, 2009 |
| August 27, 2008 Age 32 | Abandonment or Abuse of a Child; Battery (Household Member) Magistrate Court of McKinley County, Gallup, New Mexico | Guilty of Battery; Abandonment or Abuse of a Child Count dismissed Alderete violated probation on January 23, 2009 |
| January 2, 2009 Age 32 | Shoplifting Bernalillo County Metropolitan Court, Albuquerque | Guilty and sentenced to 3 days custody |
| April 25, 2009 Age 32 | Concealing Identity; Possession, Delivery, or Manufacture of Drug Paraphernalia; Tail Lamps Bernalillo County Metropolitan Court, Albuquerque | Guilty and sentenced to 59 days custody for Possession, Delivery, or Manufacture of Drug Paraphernalia and Tail Lamps Concealing Identity Count dismissed |

| | | |
|---|---|---|
| May 29, 2010<br>Age 33 | Possess/Manufacture of Drug Paraphernalia; Lewd or Immoral Acts<br>Bernalillo County Metropolitan Court, Albuquerque | Guilty of all Counts; sentence unknown |
| July 18, 2011<br>Age 34 | Kidnapping (First Degree); Conspiracy to Kidnapping (First Degree); Aggravated Burglary (Commits Battery); Conspiracy to Aggravated Burglary (Commits Battery); Aggravated Assault (Disguised); Conspiracy to Aggravated Assault (Disguised)<br>County of Bernalillo, 2nd Judicial District Court, Albuquerque | Not pursued by prosecution; unable to locate victim |
| January 18, 2012<br>Age 35 | Receiving/Transferring Stolen Motor Vehicles (2nd offense); Conspiracy to Receiving/Transferring Stolen Motor Vehicles (2nd offense); Possession of Burglary Tools; Conspiracy to Possession of Burglary Tools; Use or Possession of Drug paraphernalia<br>County of Bernalillo, 2nd Judicial District Court, Albuquerque | Guilty and sentenced to 18 months custody plus 6 months probation for Receiving/Transferring Stolen Motor Vehicles (2nd offense); Remaining Counts dismissed<br>Alderete violated probation on October 7, 2013<br>Probation revoked on January 16, 2014 |
| April 23, 2012<br>Age 35 | Controlled Substance Violation<br>Bernalillo County Metropolitan Court, Albuquerque | Not pursued by prosecution |
| June 5, 2012<br>Age 35 | Attempted Trafficking Controlled Substances (Possess with Intent) (Narcotic or Meth) (1st offense); Conspiracy to Traffic Controlled Substances (Possess with Intent)(Narcotic or Meth)(1st offense); Possession of a Controlled Substance<br>County of Bernalillo, 2nd Judicial District Court, Albuquerque | Guilty and sentenced to 3 years custody plus 4 years habitual offender enhancement, 3 years supervised probation, and 2 years parole; Remaining Counts dismissed<br>Alderete violated probation on June 19, 2017, and June 13, 2018<br>Probation revoked on August 24, 2017, and June 28, 2018 |
| June 6, 2012<br>Age 35 | Concealing Identity<br>Bernalillo County Metropolitan Court, Albuquerque | Guilty; unknown sentence |

| July 27, 2012<br>Age 35 | Burglary (Commercial); Possession of Burglary Tools; Receiving/Transferring Stolen Motor Vehicles (1st offense)<br>County of Bernalillo, 2nd Judicial District Court, Albuquerque | Alderete violated conditions of release on March 28, 2013<br>Guilty and sentenced to 18 months custody plus 6 months supervised probation for Burglary (Commercial); Remaining Counts dismissed<br>Alderete violated probation on October 7, 2013<br>Probation revoked on January 16, 2014 |
|---|---|---|
| December 13, 2013<br>Age 37 | Controlled Substance Possession Prohibited<br>Bernalillo County Metropolitan Court, Albuquerque | Prosecution did not pursue |
| August 25, 2014<br>Age 38 | Resisting, Evading, or Obstructing an Officer (service of Process)<br>Bernalillo County Metropolitan Court, Albuquerque | Count dismissed |
| December 1, 2014<br>Age 38 | Possession of a Firearm or Destructive Device by a Felon; Possession of a Controlled Substance; Tampering with Evidence; Receiving Stolen Property; Use or Possession of Drug Paraphernalia; Possession of Marijuana or Synthetic Cannabinoids (One Ounce or Less) (1st offense)<br>County of Bernalillo, 2nd Judicial District Court, Albuquerque | All Counts dismissed; State failed to provide discovery/lapel camera video to defense |
| August 27, 2015<br>Age 39 | Theft of Identity (2 Counts); Receiving Stole Property (Firearm); Possession of a Firearm or Destructive Device by a Felon<br>Bernalillo County Metropolitan Court, Albuquerque | Prosecution did not pursue |
| May 3, 2019<br>Age 42 | Possession of a Controlled Substance; Aggravated Assault (Deadly Weapon)<br>Bernalillo County Metropolitan Court, Albuquerque | Case pending |

Bail Report at 4-18.

17.     Alderete has the following medical history: (i) he has had asthma since childhood; (ii) he has been hospitalized three times for asthma-related complications; and (iii) he is pre-diabetic, and jail medical staff regularly monitor his blood sugar.  See Motion at 6.

18.     Alderete's father is seventy-three years old, and his father is currently caring for Alderete's eleven-year-old son.  See Motion at 6.

19.     Alderete's mother lives in a twenty-four-hour care facility, and she suffers from diabetes and several other chronic illnesses.  See Motion at 6.

## PROCEDURAL BACKGROUND

20.     Alderete was arrested on June 11, 2019, for felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1).  See Addendum at 1; Criminal Complaint at 1, filed June 11, 2019 (Doc. 1).

21.     The four-count Indictment charges Alderete with: (i) possession of a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); (ii) use, carry, or possession of a firearm in connection with a crime of violence or drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (iii) two counts of possession of a firearm and ammunition by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924.  See Indictment at 1-3.

22.     The Indictment arose from a Vehicle Identification Number ("VIN") inspection and subsequent search warrant that revealed two firearms in Alderete's vehicle.  See Memorandum Opinion and Order at 10-12, filed May 7, 2020 (Doc. 52)("Suppression MOO").

23.     On June 17, 2019, the Honorable John Robbenhaar, United States Magistrate Judge for the United States District Court for the District of New Mexico, ordered that the United States detain Alderete pending trial.  See Addendum at 1; Order of Detention Pending Trial at 1, filed June 17, 2019 (Doc. 10).

24.     At Alderete's detention hearing, Magistrate Judge Robbenhaar weighed the factors set forth in 18 U.S.C. § 3142(g), and he concluded that the United States had proven by "clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community" and that the United States had proven by a "preponderance of evidence that no condition or combination of conditions of release will reasonably assure [Alderete's] appearance as required."  Order of Detention Pending Trial at 2.

25.     The Bail Report recommends that Alderete remain in custody pending trial.  See Bail Report at 3.

26.     The Bail Report asserts that Alderete poses a risk of nonappearance, because of: (i) the nature of the pending charges; (ii) Alderete's substance abuse history; (iii) Alderete's criminal history and record of failure to appear; (iv) Alderete's lack of verifiable, legitimate employment; and (v) Alderete's record of non-compliance with conditions of pretrial release, probation, and parole.  See Bail Report at 2.

27.     Additionally, the Bail Report asserts that Alderete poses a risk of danger to the community, because of: (i) the nature of the federal offense for which he is being prosecuted; (ii) Alderete's prior arrests and convictions; (iii) Alderete's record of non-compliance with conditions of pretrial release, probation, and parole; and (iv) Alderete's criminal history.  See Bail Report at 2.

28.     Magistrate Judge Robbenhaar's Order of Detention Pending Trial weighed the factors set forth in 18 U.S.C. § 3142(g), and concluded that the United States has proven by "clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community."  Order of Detention Pending Trial at 2.

29.     Magistrate Judge Robbenhaar ordered that Alderete be detained, because of: (i) the strength of the evidence's weight against Alderete; (ii) the lengthy period of incarceration if Alderete is convicted; (iii) Alderete's criminal history; (iv) Alderete's past criminal activity while on probation, parole, or supervision; (v) Alderete's history of violence or use of weapons; (vi) Alderete's history of alcohol or substance abuse; (vii) Alderete's lack of stable employment; (viii) Alderete's past failure to appear in court as ordered; and (ix) Alderete's past attempts to evade law enforcement.  Order of Detention Pending Trial at 2-3.

30.     Alderete is detained at the Santa Fe Detention Center.  <u>See</u> Motion at 1.

**1.      <u>Supplemental Findings of Facts Regarding COVID-19 Pandemic</u>.**

31.     In early January, 2020, Wuhan, China began experiencing an outbreak of COVID-19 cases.  <u>See</u> WHO Timeline -- Covid-19, World Health Organization (April 27, 2020), https://www.who.int/news-room/detail/27-04-2020-who-timeline---covid-19 (last visited May 21, 2020).

32.     COVID-19 is a contagious disease that is spread through respiratory droplets that are released when infected individuals cough, sneeze, or talk.  <u>See</u> Coronavirus disease 2019 (COVID-19), Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963 (last visited May 21, 2020)("Mayo Clinic").

33.     COVID-19's symptoms include fever, coughing, and shortness of breath.  <u>See</u> Symptoms of Coronavirus, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited May 20, 2020).

34.     There is limited information available about COVID-19's risk factors for severe illness.  <u>See</u> Groups at Higher Risk for Severe Illness, CDC,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html

(last visited May 18, 2020)("CDC COVID-19 Risk Factors").

35.     People of any age are at a higher risk of severe illness or death from COVID-19 if they have any of the following health conditions or risk factors: (i) asthma; (ii) chronic kidney disease being treated with dialysis; (iii) chronic lung disease; (iv) diabetes; (v) hemoglobin disorders[2]; (vi) compromised immune systems[3]; (vii) liver disease; (viii) serious heart conditions; and (ix) severe obesity.  See CDC COVID-19 Risk Factors.

36.     On January 20, 2020, the United States Centers for Disease Control and Prevention ("CDC") reported the United States' first case of COVID-19 in the State of Washington.  See First Case of 2019 Novel Coronavirus in the United States, The New England Journal of Medicine (January 31, 2020), https://www.nejm.org/doi/full/10.1056/NEJMoa2001191 (last visited May 20, 2020).

37.     On March 11, 2020, the New Mexico Department of Health reported the first positive COVID-19 test for a New Mexico resident.  See New Mexico Announces First Presumptive Positive COVID-19 Cases, New Mexico Department of Health (March 11, 2020), https://cv.nmhealth.org/2020/03/11/new-mexico-announces-first-presumptive-positive-covid-19-cases/ (last visited May 20, 2020).

---

[2]Hemoglobin disorders are diseases, such as sickle cell disease and thalassemia, that affect the level of hemoglobin -- a protein in red blood cells that carries oxygen throughout the body -- in a person's blood.  See CDC COVID-19 Risk Factors; Low Hemoglobin count, Mayo Clinic, https://www.mayoclinic.org/symptoms/low-hemoglobin/basics/definition/sym-20050760     (last visited May 18, 2020).

[3]A person may have a compromised, or weakened, immune system if, for example, he or she has recently undergone cancer treatment, has had a bone marrow or organ transplantation, has HIV, has used corticosteroids for a prolonged period of time, or takes immunity-weakening medications.  See CDC COVID-19 Risk Factors.

38.     On March 13, 2020, President Donald J. Trump declared that the COVID-19 outbreak in the United States constitutes a national emergency.  See Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), White House, https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/   (last visited May 20, 2020).

39.     Throughout March, 2020, the Governor of New Mexico, Michelle Lujan Grisham urged New Mexico residents to avoid public gatherings, avoid non-essential travel, and engage in social distancing.  See Emergency Declaration; Marjorie Childress, Celia Raney, and Trip Jennings, Officials predict dire consequences if state doesn't practice social distancing, New Mexico In Depth (March 31, 2020), http://nmindepth.com/2020/03/31/officials-predict-dire-consequences-if-state-doesnt-practice-social-distancing/ (last visited May 20, 2020).

40.     Social distancing "refers to measures that are taken to increase the physical space between people to slow the spread of the virus." Answers To Your Coronavirus Questions at 18, N.Y. Times, https://static01.nyt.com/files/2020/ebooks/corona-virus-questions/nyt-coronavirus-answers.pdf (last visited May 20, 2020)("NYT Answers").

41.     On March 24, 2020, Governor Lujan Grisham issued a "stay-at-home" order closing all of the State of New Mexico's businesses, except for those businesses "pertaining to essential services for the preservation of health, safety, and well-being." State enacts further restrictions to stop spread, including stay-at-home instruction, The State of New Mexico (March 23, 2020), https://www.newmexico.gov/2020/03/23/state-enacts-further-restrictions-to-stop-spread-including-stay-at-home-instruction/#:~:text=The%20order%20advises%20that%20New,%E2%80%9D%20the%20governor%20said. (last visited May 20, 2020).

42.     As of May 4, 2020, at least 4,031 New Mexican residents had contracted the disease caused by COVID-19, and 156 New Mexican residents had died from the disease.  See Coronavirus in New Mexico, Albuquerque Journal, https://www.abqjournal.com/coronavirus (last visited May 20, 2020).

43.     The New Mexico Corrections Department has suspended inmate visitation, but "[p]hone call access has been increased in all facilities and inmates are being give one no cost call per week."  Precautions NMCD is taking in response to the virus, New Mexico Corrections Department,  https://www.newmexico.gov/other-affected-services/corrections-department/  (last visited May 20, 2020).

44.     The Santa Fe Detention Center offers video visitations with inmates.  See Corrections Department, Santa Fe County, https://www.santafecountynm.gov/corrections/ adultfacility (last visited May 21, 2020).

45.     The Santa Fe Detention Center has taken efforts to mitigate its inmates' risk of COVID-19 infection:

> Each inmate booked at the jail is screened outside for COVID-19 symptoms before entering the facility and faces a minimum 14-day isolation or quarantine period before entering the general population, [Warden Derek] Williams said.
>
> Those showing no symptoms are housed in a separate unit, where their conditions are monitored.  If they show no symptoms at the end of the isolation period, they move to general population.  Those with symptoms are given an N95 mask before going inside the facility and are taken to an individual cell in a quarantine pod.
>
> . . . .
>
> Williams said crews have been keeping the jail clean. Cleaning crews and inmate porters disinfect and clean common areas each day, and the jail goes into lockdown two days a week to clean each cell and wipe down sinks and beds, as well as disinfect all surfaces, Williams said.

Supplies for hand-washing and cleaning are available, he added.  He denied allegations made by inmates in a recent Searchlight New Mexico[4] story that reported the jail was not providing such supplies.

Amanda Martinez, <u>No confirmed coronavirus cases at Santa Fe Detention Center as staff modifies procedures</u>, Santa Fe New Mexican (dated April 3, 2020), https://www.santafenewmexican. com/news/coronavirus/no-confirmed-coronavirus-cases-at-santa-fe-county-jail-as-staff-modifies-procedures/article_bef64404-72d0-11ea-83d3-6f8c2d608c7d.html (last visited May 20, 2020).

46.     As of May 17, 2020, "[j]ust one of the nearly 4,000 inmates and staff tested in [New Mexico's] 11 prisons is positive for COVID-19."  Jeff Proctor, <u>One in nearly four-thousand: NM prison COVID-19 testing shows strikingly low positive rate</u>, NM Political Report (dated May 17, 2020),   https://nmpoliticalreport.com/2020/05/17/one-in-nearly-four-thousand-nm-prison-covid-19-testing-shows-strikingly-low-positive-rate/  (last visited May 20, 2020)("<u>NM Prisons' Low Positive Rate</u>").

47.     Governor Lujan Grisham reported on May 17, 2020, that two individuals have tested positive for COVID-19 at the Cibola County Correctional Center, thirty-five individuals have tested positive at the Otero County Prison facility, forty-three individuals have tested positive at the Otero County Processing Center, and one individual has tested positive at the Torrance County Detention Facility.  <u>See</u> Updated New Mexico COVID-19 cases: Now at 5,938; six additional deaths, Press Releases (dated May 17, 2020), Office of the Governor Michelle Lujan Grisham, https://www.governor.state.nm.us/2020/05/17/updated-new-mexico-covid-19-cases-now-at-5938-six-additional-deaths/ (last visited May 20, 2020).

---

[4]Searchlight New Mexico is a non-partisan, nonprofit news organization located in Santa Fe, New Mexico.  <u>See</u> Searchlight New Mexico, https://www.searchlightnm.org/about (last visited May 20, 2020).

48.     At the Santa Fe Detention Center, inmates are "housed according to [a] risk assessment that the jail and the warden do when the inmate is coming in."  Draft Transcript of Hearing at 12:14-16 (taken April 23, 2020)(Outler)("Tr.").[5]

49.     One inmate at the Santa Fe Detention Center has tested positive for COVID-19. See Tr. at 12:14-20 (Outler).

50.     Alderete does not have any opportunities to interact with the one inmate who tested positive for COVID-19.  See Tr. at 13:2-4 (Outler).

51.     There is no commingling between the inmates housed in the infected inmate's pod and the inmates in Alderete's pod.  See Tr. at 12:20-22 (Outler).

52.     On May 18, 2020, the United States Marshals Service for the District of New Mexico informed the Court via email that there are currently zero cases of COVID-19 at the Santa Fe Detention Center.

53.     Since the beginning of the COVID-19 pandemic, Albuquerque's crime rate has not dropped.  See Faith Egbuonu, City of Albuquerque addresses crime amid COVID-19 pandemic, KOB 4 (dated April 16, 2020), https://www.kob.com/new-mexico-news/city-of-albuquerque-addresses-crime-amid-covid-19-pandemic/5702518/ (last visited May 20, 2020).

54.     On May 15, 2020, Governor Lujan Grisham began easing restrictions on businesses in New Mexico by issuing an order allowing "retailers . . . to operate at 25 percent of their maximum occupancy as determined by fire code."  Governor signs modified, extended public health order easing some restrictions and requiring face coverings, New Mexico Department of Health (May 15, 2020), https://cv.nmhealth.org/2020/05/15/governor-signs-modified-extended-

---

[5]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

- 15 -

public-health-order-easing-some-restrictions-and-requiring-face-coverings/ (last visited May 20, 2020).

55.     As of May 20, 2020, 6,317 New Mexican residents had contracted the disease that COVID-19 causes, and 283 New Mexican residents had died from the disease.  See Coronavirus in New Mexico, Albuquerque Journal, https://www.abqjournal.com/coronavirus (last visited May 21, 2020).

56.     Governor Lujan Grisham reported on May 20, 2020, that, of New Mexico inmates held in federal custody, two individuals have tested positive for COVID-19 at the Cibola County Correctional Center, thirty-eight individuals have tested positive at the Otero County Prison facility, sixty-two individuals have tested positive at the Otero County Processing Center, and one individual has tested positive at the Torrance County Detention Facility.  See Updated New Mexico COVID-19 cases: Now at 5,938; six additional deaths, Press Releases (dated May 21, 2020), Office of the Governor Michelle Lujan Grisham, https://www.governor.state.nm.us/2020/05/20/updated-new-mexico-covid-19-cases-now-at-6317-seven-additional-deaths/ (last visited May 21, 2020).

57.     One inmate at the Hidalgo County Detention Center has tested positive for COVID-19.  See Algernon D'Ammassa, Las Cruces Sun News (May 20, 2020), https://www.lcsun-news.com/story/news/local/2020/05/20/hidalgo-county-detention-center-inmate-diagnosed-covid-19/5225588002/ (last visited May 21, 2020).

58.     On May 20, 2020, the U.S. Marshals Service for the District of New Mexico informed the Court via email that there are currently zero cases of COVID-19 at the Santa Fe Detention Center, where Alderete is detained.

## 2.       **Procedural Background After the COVID-19 Pandemic's Onset.**

59.       In response to the COVID-19 outbreak, Alderete filed his Motion requesting release from the Santa Fe Detention Center.  See Motion at 1.  The United States and the USPO oppose Alderete's request for release.  See United States' Response Opposing Defendant's Urgent Motion for Release Due to Coronavirus Outbreak at 1, filed April 17, 2020 (Doc. 45)("Response"); Addendum at 1.  The Court held a hearing on April 23, 2020.  See Tr. at 1.

### a.       **The Motion.**

60.       Alderete filed his Motion on April 8, 2020.  See Motion at 1.  Alderete argues that his health conditions "place him within the group of people at heightened risk for serious illness should he contract the COVID-19 coronavirus."  Motion at 1.  Alderete contends that COVID-19's risk to him and the general prison population, and his family's struggle "navigat[ing] the health pandemic in his absence," are "compelling reasons" under the Bail Reform Act, 18 U.S.C. §§ 3141-50, for temporarily releasing him from the Santa Fe Detention Center until the COVID-19 pandemic dissipates.  Motion at 1.  See id. ("The Bail Reform Act provides for the 'temporary release' of a person in pretrial custody 'to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.'" (quoting 18 U.S.C. § 1342(i))).  Alderete alternatively argues that the COVID-19 pandemic "is a changed circumstance within the meaning of the Bail Reform Act" and that the Court can craft conditions of his release that ensure community safety.  Motion at 2.

> [T]he [Bail Reform] Act authorizes reopening a detention hearing where new 'information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.'" (quoting 18 U.S.C. § 3142(f))).  Alderete requests that the Court release him to the custody of his father, Robert Alderete, Sr. See Motion at 2.  According to Alderete, he "would reside at home with his father

and son at his father's home in Belen, New Mexico, under the supervision of United States Pretrial Services, with any conditions this Court feels necessary.

Motion at 2.

61.     Alderete argues that the "circumstances that existed when the Court entered its detention order have now changed."  Motion at 6.  Alderete notes that, as of April 8, 2020, over 1.4 million people worldwide had contracted COVID-19, with the United States being the "most infected nation in the world, with 418,185 confirmed cases."  Motion at 2.  Alderete states that, as of April 8, 2020, 794 New Mexican residents had contracted COVID-19, and thirteen New Mexican residents had died from the disease.  See Motion at 3.  Alderete asserts that certain people have a higher risk of severe illness if they contract COVID-19: "adults aged 65 and older, people with chronic lung disease or moderate to severe asthma, people with serious heart conditions, people who are immunocompromised, and people with diabetes or liver disease."  Motion at 3 (citing People Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention,      https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fhigh-risk-complications.html (last visited May 5, 2020)("People at Risk")).   According to Alderete, the CDC advises that at-risk individuals "take immediate preventative actions, including avoiding crowded areas and staying home as much as possible."  Motion at 3 (citing People at Risk).

62.     Alderete argues that "[t]here is a compelling reason to permit [his] temporary release until the coronavirus threat passes."  Motion at 6.  Alderete provides the following personal circumstances as support: (i) he has had asthma since childhood; (ii) he has been hospitalized three times for asthma-related complications; and (iii) he is pre-diabetic, and jail medical staff regularly

monitor his blood sugar.  See Motion at 6.  Alderete also asserts that his family's circumstances

necessitate his release.  See Motion at 6.  Alderete states:

> His mother has many chronic illnesses, including COPD,[6] conjunctive
> heart failure, and is diabetic.  She is currently in a 24 hour care facility in isolation,
> to make sure she does not come in contact with anyone who is positive for COVID-
> 19.  It would almost certainly be fatal.  No in-person visits at the care facility are
> allowed due to the virus outbreak.  Meanwhile, Mr. Alderete's 73-year-old father,
> Robert Alderete, Sr. provides care for Mr. Alderete's 11-year-old son.  Due to his
> age and his own underlying health conditions, Mr. Alderete, Sr. is afraid to leave
> the house to shop for essentials and expose himself.  Mr. Alderete's son is too young
> to take over these duties.  The family's financial situation is increasingly precarious.

Motion at 6.

63.     Alderete contends that, under the Bail Reform Act, courts "should 'bear in mind

that it is only a limited group of offenders who should be denied bail pending trial.'"  Motion at 7

(quoting United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987), and citing United States v.

Salerno, 481 U.S. 739, 755 (1987)).  Alderete argues that, "[l]ong prior to the current health crisis,

courts have recognized that medical conditions are relevant in bail determinations."  Motion at 7

(quoting United States v. Scarpa, 815 F. Supp. 88, 93 (E.D.N.Y. 1993)(Weinstein, J.), and citing

United States v. Adams, 6:19-mj-00087-MK, 2019 WL 3037042 (D. Or. July 10,

2019)(Kasubhai, M.J.); United States v. Johnston, Magistrate No. 17-00046 (RMM), 2017 WL

4277140 (D.D.C. Sept. 22, 2017)(Meriweather, J.); United States v. Cordero Caraballo, 185 F.

Supp. 2d 143 (D.P.R. 2002)(Gelpi, M.J.)).  Alderete says that many federal courts recently have

granted release because of the COVID-19 pandemic.  See Motion at 8 (citing Xochihua-James v.

Barr, 798 F. App'x 52 (9th Cir. 2020)(unpublished); United States v. Grobman, No. 18-cr-20989,

---

[6]COPD refers to chronic obstructive pulmonary disease, which is a disease that causes
obstructed airflow from the lungs.  See COPD, Mayo Clinic, https://www.mayoclinic.
org/diseases-conditions/copd/symptoms-causes/syc-20353679 (last visited May 21, 2020).

Dkt. 397 (S.D. Fla. March 29, 2020)(Goodman, M.J.); <u>United States v. Powell</u>, No. 1:94-cr-316-ESH, 2020 WL 1698194 (D.D.C. March 28, 2020)(Huvelle, J.); <u>United States v. Mclean</u>, No. 19-cr-380 (RDM)(D.D.C. March 28, 2020)(Moss, J.); <u>United States v. Kennedy</u>, No. 5:18-cr-20315, 2020 WL 1493481 (E.D. Mich. March 27, 2020)(Levy, J.); <u>Coronel v. Decker</u>, 20-cv-2472 (AJN), 2020 WL 1487274 (S.D.N.Y. March 27, 2020)(Nathan, J.); <u>United States v. Michaels</u>, 8:16-cr-76-JVS, Minute Order, dkt. 1061 (C.D. Cal. March 26, 2020)(Selna, J.); <u>United States v. Jaffee</u>, No. 19-cr-88 (RDM)(D.D.C. March 26, 2020)(Moss, J.); <u>United States v. Harris</u>, Criminal Action No. 19-356, 2020 WL 1482342 (D.D.C. March 26, 2020)(Moss, J.); <u>Basank v. Decker</u>, 20 Civ. 2518 (AT), 2020 WL 1481503 (S.D.N.Y. March 26, 2020)(Torres, J.); <u>United States v. Garlock</u>, Case No. 18-cr-00418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. March, 25, 2020)(Chhabria, J.); <u>United States v. Avenatti</u>, Case No. SACR 19-61-JVS, 2020 WL 1482552 (C.D. Cal. March 25, 2020)(Selna, J.); <u>United States v. Copeland</u>, No. 2:05-cr-135-DCN (D.S.C. March 24, 2020)(Norton, J.); United <u>States v. Perez</u>, 19 Cr. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. March 19, 2020)(Engelmayer, J.); <u>United States v. Stephens</u>, 15-cr-95 (AJN), 2020 WL 1295155 (S.D.N.Y. March 19, 2020)(Nathan, J.); <u>In re Manrigue</u>, Case No. 19-mj-71055-MAG-1 (TSH), 2020 WL 1307109 (N.D. Cal. March 19, 2020)(Hixson, M.J.); <u>United States v. Barkman</u>, Case No. 3:19-cr-0052-RCJ-WGC, 2020 WL 1811343 (D. Nev. March 17, 2020)(Jones, J.); <u>United States v. Matthaei</u>, No. 1:19-CV-00243-BLW, 2020 WL 1443227, at *1 (D. Idaho March 16, 2020)(Winmill, J.).

64.     Alderete argues that the COVID-19 pandemic is a "compelling circumstance" and that "conditions of release are available" to account for the pandemic.  Motion at 10.  According to Alderete, "changed circumstances suggest conditions of release *could* assure community safety and his appearance."  Motion at 10.  Alderete says that, if the Court releases him from custody, he

will focus "on caring for his family during these difficult and novel circumstances."  Motion at 10.

Alderete asserts that he will not pose a danger to the community, because Pretrial Services will

monitor him, and because "he would seriously risk his health were he to violate social distancing

requirements."  Motion at 10-11.  Alderete argues that, of the 919 cases "in release status" in the

District of New Mexico during the twelve-month period ending September 30, 2018, "there were

violations in only 14.6% of the cases, and only 33 failures to appear.  There were zero rearrest

violations for new crimes."  Motion at 11 (citing Table H-15, U.S. District Courts -- Pretrial

Services Violations Summary Report for the 12-Month Period Ending September 30, 2018 at 1-3,

Administrative Office of the United States Courts, http://jnet.ao.dcn/court-services/probation-

pretrial-services/caseload-tables/pretrial-services-h-tables-september-2018/pretrial-services-

violations-summary-report (last visited May 21, 2020)).  Alderete contends that, if the Court

releases him to his father's custody, he "can be regularly monitored by electronic monitoring

equipment, and his movements would be limited to essential tasks only -- per order of the Court

and per current stay-at-home restrictions in New Mexico."  Motion at 11.

> **b.**      **The Response.**

65.      The United States responded to the Motion on April 17, 2020.  See Response at 1.

The United States argues that Alderete "has not shown that the pandemic poses a meaningful threat

to him personally while he is in federal custody."  Response at 1.  The United States also asserts

that the pandemic does not make Alderete "less dangerous or more likely to appear."  Response

at 1.  According to Alderete, "the pandemic has no 'material bearing' on the Court's original

balancing of the § 1342(g) factors supporting detention."   Response at 1 (quoting 18 U.S.C.

§ 3142(f)).

66.     The United States argues that, although the Motion's Factual Background section describes the COVID-19 pandemic's potential risks to inmate populations, see Response at 4 (citing Motion at 2-5), "[t]his background does not mention or relate to Defendant personally in any way," Response at 4.  The United States further asserts that the Motion is not "tailored" to Alderete's "particular circumstances, but rather is generic and opportunistic."   Response at 4.  According to the United States, a "speculative, generalized threat of inmate infection . . . is not a 'compelling reason' for release under 18 U.S.C. § 3142(i)."  Response at 4 (quoting 18 U.S.C. § 3142(i)).  The United States avers that most of the cases that the Motion cites are from "districts with significantly higher rates of COVID-19 infection per capita than New Mexico, and thus places where the threat to confined populations is substantially less speculative than here."  Response at 4 (citing Coronavirus in the U.S.: Latest Map and Case Count, N.Y. Times, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last visited May 21, 2020)).  The United States emphasizes that none of the cases that Alderete cites is from New Mexico or any district court within the United States Court of Appeals for the Tenth Circuit.  See Response at 4.

67.     The United States argues that "the federal court in New Mexico and courts elsewhere in the Tenth Circuit have uniformly rejected this speculative threat argument alone as grounds for release of an inmate."  Response at 5.  The United States says that, for example, in United States v. Clark, Case No. 19-40068-01-HLT, 2020 WL 1446895 (D. Kan. March 25, 2020)(Mitchell, M.J.), the Honorable Angel Mitchell, United States Magistrate Judge for the United States District Court for the District of Kansas, held that "a generalized threat, which has not yet directly affected a particular defendant, is not a 'compelling reason' for that defendant's release under 18 U.S.C. § 3142(i)."  Response at 5 (quoting United States v. Clark, 2020 WL 1446895, at *1).  The United States quotes Magistrate Judge Mitchell's reasoning: "'The court is

mindful of the unprecedented magnitude of COVID-19 pandemic and the extremely serious health

risks it presents.  But, in that context, a defendant should not be entitled to temporary release under

§ 3142(i) based solely on generalized COVID-19 fears and speculation.'"  Response at 5 (quoting

United States v. Clark, 2020 WL 1446895, at *3).  See Response at 5 (citing United States v. Little,

No. 2:19-CR-04182-KG, Order Denying Motion for Reconsideration at 2 (Doc. 35)(D.N.M.

March 27, 2020)(Sweazea, M.J.)("The Court is unwilling to temporarily release Defendant on his

assumption and speculation that he may be infected at some future time.")).

    68.    The United States asserts that the threat of COVID-19 spread amongst New

Mexico's federal inmate populations is speculative, because there are no confirmed COVID-19

cases among New Mexico inmates who, like Alderete, are in the U.S. Marshals Service's custody.

See Response at 5.  The United States attributes New Mexico federal prisons' lack of COVID-19

cases to the "relative dearth of COVID-19 cases in New Mexico generally" and to the U.S.

Marshals Service's "diligent efforts . . . to prevent COVID-19 contagion or spread among the

inmates in their custody."  Response at 5.  The United States notes that the Santa Fe Detention

Center -- where Alderete is being held -- has had one inmate who has contracted COVID-19, and

the United States argues that, because the inmate with COVID-19 is in state custody, Alderete will

not come into contact with the inmate.  See Response at 5.  The United States further notes that

the state inmate with COVID-19 "has been in quarantine for nearly two weeks and is recovering

without issue."  Response at 5-6.  The United States asserts that, "if additional Santa Fe inmates

do test positive, the facility has a detailed action plan for inmate separation and quarantine to

prevent further spread."  Response at 6.  The United States further notes that the "Santa Fe jail is

also transferring all female inmates to a separate facility in order to create additional capacity for

large quarantines, should that become necessary."  Response at 6.

69.     The United States argues that, beyond Alderete's status as an inmate, Alderete identifies no aspect of his personal circumstances that amounts to a "'compelling reason' to release him from custody."   Response at 6 (quoting 18 U.S.C. § 3142(i), and citing United States v. Hamilton, 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. March 20, 2020)(Garaufis, J.)).  The United States emphasizes that Alderete does not allege that: (i) he has COVID-19; (ii) he has been exposed to COVID-19; (iii) he has a life-threatening illness; or (iv) he has been denied medical care while in federal custody.  See Response at 6.  According to the United States, Alderete "has not described some perceived shortcoming of [the U.S. Marshals Service's] oversight or any condition at the Santa Fe jail that he contends places him or other inmates at heightened risk."  Response at 6.

70.     Next, the United States concedes that the COVID-19 pandemic was not discussed at the detention hearing in July, 2019, but it argues that, "even if known, [the pandemic] would not have changed the outcome then and it remains immaterial now."  Response at 7.  The United States argues that Alderete does not attempt "to argue that the COVID-19 pandemic, to the extent it has affected [him] at all, changes [his] criminal history or makes him less dangerous."  Response at 7.  The United States also notes that two of the charges against Alderete -- violations of 18 U.S.C. §§ 841(a)(1) and 924(c)(1)(A)(i) -- "carry a rebuttable presumption of pretrial detention."  Response at 7 (citing 18 U.S.C. § 3142(e)(3)(A)-(B)).  The United States avers that the Motion does not rebut this presumption.  See Response at 7.  The United States argues that Alderete provides no reasons why the Court should reconsider the "earlier conclusion that [he] is a danger to the community," and, thus, the Court should deny the Motion.  Response at 7 (citing United States v. Padilla, No. CR 19-0942 WJ (Doc. 35)(D.N.M. April 9, 2020)(Johnson, C.J.)).

- 24 -

71.     The United States also notes that the Court determined that Alderete is a flight risk based on Alderete's "rampant nonappearance and noncompliance history," which the United States argues has continued since his state arrest underlying the current federal case.  Response at 8.  According to the United States, the Motion does not "explain the noncompliance history, rebut the presumption of detention, or show how the even more considerable prison sentence he now faces weighs in favor of release."  Response at 8.  The United States notes that, although Alderete says that he will focus on caring for his family if the Court releases him from custody, Alderete made the same argument at his July, 2019, detention hearing.  See Response at 8 (citing Motion at 10).  The United States argues that, "even though COVID-19 itself is new, Defendant's family needs, and his argument that he should be released to attend to them, are not."  Response at 8.  The United States further avers that, even if COVID-19 has heightened Alderete's family needs and concerns, Alderete "has not shown how that genuinely alters the Court's earlier flight risk calculus."  Response at 8.

c.     **The Addendum.**

72.     The USPO filed the Addendum to the Bail Report on April 22, 2020.  See Addendum at 1.  The USPO notes that Alderete "has an extensive criminal history including arrests for Robbery, Escape, Aggravated Battery, Felon in Possession of a Firearm and Trafficking Controlled Substances."  Addendum at 1.  The USPO also notes that Alderete "has had multiple instances of non-compliance and failing to report to probation authorities as directed."  Addendum at 1.  The USPO reports that, while Alderete requests to be released to his father's custody and to live with his father upon release, Alderete was living with his father when he was arrested on the federal offense for which he is being prosecuted.  See Addendum at 1.  Finally, the USPO "maintains the recommendation of detention in this matter, as it appears there is no condition or

combination of conditions that will reasonably assure the appearance of this defendant as required or the safety of the community."  Addendum at 1.

### d.    The April 23, 2020, Hearing.

73.    At the hearing, Alderete said there are two statutory bases for his release.  See Tr. at 4:5-10 (Gagan).  Alderete argued that the first basis for release is § 3142(i), which allows temporary release for a "compelling reason," and the second basis is § 3142(f), which allows temporary release whenever "new information" arises in a case.  Tr. at 4:11-13 (Gagan).  The Court noted that, if Alderete argues release on the second basis, then he must overcome §§ 841(a)(1)'s and 924(c)(1)(A)(i)'s rebuttable presumption of pretrial detention.  See Tr. at 4:15-17 (Court).  The Court opined that the first basis for release provides "more room for" Alderete and then asked whether it is reading the statutes correctly.  Tr. at 4:18 (Court).  Alderete agreed with the Court's interpretation of the statutes and said he is "primarily focused on the compelling circumstances of the coronavirus."  Tr. at 4:22-23 (Gagan).  Alderete argued that he does "not think that the Court needs to necessarily conduct an analysis of much into risk to the community and flight because it's a temporary release for compelling circumstance."  Tr. at 4:24-5:2 (Gagan).

74.    Alderete said he would like to talk about how the COVID-19 is affecting "jails both here and elsewhere" and how the COVID-19 might affect New Mexico jails "if and when there is an outbreak in the jails in New Mexico."  Tr. at 5:4-7 (Gagan).  The Court said that the U.S. Marshals Service provides the Court with frequent reports about the COVID-19 in the federal detention centers, and a recent report indicates that there are no zero cases.  See Tr. at 5:13-19 (Court).  The Court asked Alderete whether that is correct.  See Tr. at 5:19-20 (Court).  Alderete responded that his

understanding is that there are no positive cases in the marshal's population, but there is one positive case at the Cibola Correctional Center where marshals' detainees are housed, and there is also one positive case at the Santa Fe Jail where marshals' detainees are housed, including where Mr. Alderete is housed.

Tr. at 5:21-6:2 (Gagan).

75.    The Court asked whether federal detainees at the Santa Fe Detention Center are segregated from the other inmates.  See Tr. at 6:3-6 (Court).  Alderete said that the U.S. Marshals reported that inmates do not have contact with federal detainees at the Santa Fe Detention Center. See Tr. at 6:7-9 (Gagan).  Alderete stated that he currently is housed in a pod with five state detainees.  See Tr. at 6:9-12 (Gagan).  Alderete argued that "there is mingling of state and federal detainees in the pods normally at the Santa Fe Jail."  Tr. at 6:12-14 (Gagan).  Alderete asserted that, even if federal detainees are not housed with inmates, COVID-19 still can spread between inmate and detainee populations.  See Tr. at 6:17-20 (Gagan).  Alderete argued that employees, medical staff, and correctional officers "move from pod to pod" and inmates also "move[] around the facility."  Tr. at 6:21-22 (Gagan).  Alderete also noted that the "food at the jails is oftentimes made by other inmates."  Tr. at 6:25-7:1 (Gagan).  Alderete argued that even though federal detainees are not housed with state and federal inmates, this fact does not "mean[] there's no chance of it spreading from state to federal prisoners."  Tr. at 7:3-4 (Gagan).  Alderete asserted:

> We can look at other jails that have struggled with outbreaks to just illustrate this.  I put in my motion the Cook County Jail, how quickly the virus spread once it was first confirmed in that facility, and it became a huge source of community spread that spread within the jail facility, can easily be spread within the community.  There was an article in NPR -- on NPR earlier this week about an Ohio prison, an Ohio state prison where they started testing everyone, and they got 1,828 confirmed cases within the inmates.

Tr. at 7:5-15 (Gagan).

76.     Alderete argued that the COVID-19's threat is a matter of "when, not if," it spreads in New Mexico prisons.  Tr. at 7:17 (Gagan).  Alderete noted that asymptomatic carriers can spread COVID-19.  See Tr. at 7:19 (Gagan).  Alderete argued that "[w]e don't know that the numbers that are being reported in the news for how many people have the COVID virus at any given time is an accurate count of how many people in the community have the virus."  Tr. at 7:20-24 (Gagan).  Alderete said that the CDC, the state government, and the federal government thus recommend "social distancing measures," which, according to him, means that people should "stay six feet apart from each other, . . . [and not] congregate in groups of five or more unless it's for some type of essential purpose."  Tr. at 8:1-4 (Gagan).  Alderete argued that incarcerated persons' ability to engage in social distancing is "severely limited."  Tr. at 8:7 (Gagan).  Alderete argued that the Santa Fe Detention Center has not provided him with a mask, hand sanitizer, or soap, other than the soap that he can buy at the detention center.  See Tr. at 8:7-11 (Gagan).  Alderete argued that, because of his underlying health conditions, "if he contracts this virus, it could simply be too late" and "could be a death sentence for him."  Tr. at 8:15-17 (Gagan).

77.     Alderete conceded that there are no confirmed cases of COVID-19 amongst detainees or inmates in the U.S. Marshals Service's custody.  See Tr. at 8:21-22 (Gagan).  Alderete contended, however, that whether COVID-19 will affect inmates and detainees in New Mexico jails is not a "hypothetical" question.  Tr. at 8:23 (Gagan).  Alderete argued that, although New Mexico might be "reaching a place where things can return to a more normal structure, that doesn't mean that the virus is gone."  Tr. at 8:25-9:2 (Gagan).  Alderete asserted that waiting to see if there will be an outbreak at the Santa Fe Detention Center is not a "reasonable plan for him because . . . it will be too late."  Tr. at 9:7-8 (Gagan).

78.    Alderete also argued that temporary release from custody would enable him to care for his family.  See Tr. at 9:15-16 (Gagan).  Alderete said that "his mother has very serious underlying health conditions."  Tr. at 9:17-18 (Gagan).  Alderete said he would be able to help his father care for his son, who is eleven years old.  See Tr. at 9:19-20 (Gagan).  Alderete argued that, if the Court concludes that there is a compelling reason for his release, then the Court does not have to determine whether he is a flight risk or a danger to the community.  See Tr. at 9:20-10:1 (Gagan).  Alderete nonetheless added that travel restrictions, local stay-at-home laws, the fact that most businesses are closed, and Pretrial Services' supervision "could ensure that he complies with any conditions this Court may impose."  Tr. at 10:6-8 (Gagan).  Alderete said that he would be "happy to wear electronic home monitoring equipment" and that his conditions of release could prohibit him from leaving his home except for essential errands, which is "the law right now in the State of New Mexico for us all."  Tr. at 10:9-14 (Gagan).  Alderete reiterated that "science and public health professionals are clear that limiting interactions amongst people is the number one way to stop spread of the virus at this time, and it's simply not possible for people who are incarcerated to do that as effectively."  Tr. at 10:17-21 (Gagan).  Alderete said that, because of his health conditions, "he's uniquely susceptible to serious complications."  Tr. at 10:23-24 (Gagan).  Alderete concluded by arguing that these circumstances amount to a "compelling reason to justify temporary release."  Tr. at 10:16 (Gagan).

79.    The United States argued that the "touchstone for the Courts that have looked at the coronavirus issue" under § 3142(i) is whether an outbreak is "actually happening in the jail."  Tr. at 11:8-11 (Outler).  The United States contended that one other important factor that courts have considered are whether a "prisoner has an actual reason to leave" -- such as a terminal illness.  Tr. at 11:12 (Outler).  The United States said that the courts which have determined that COVID-19

is not yet present in a jail have concluded that the COVID-19 pandemic is not a "compelling reason." Tr. at 11:19 (Outler). The United States argued that COVID-19 is "just a speculative harm that may happen in the future" in New Mexico jails. Tr. at 11:17-18 (Outler).

80.     The United States said that the Court is correct that, to date, no inmates in the U.S. Marshals Service's custody have tested positive for COVID-19. See Tr. at 11:23-25 (Outler). The United States attributed the low number of COVID-19 cases to "the diligent work of the Marshal Service and to the relative low number of cases in New Mexico generally, at least compared to New York and New Jersey and the East Coast cities." Tr. at 12:1-4 (Outler). The United States noted that, in the Santa Fe Detention Center where Alderete is being detained, federal inmates are not segregated from state inmates. See Tr. at 12:12-14 (Outler). According to the United States, inmates are "housed according to [a] risk assessment that the jail and the warden do when the inmate is coming in." Tr. at 12:14-16 (Outler). The United States said that the one inmate at the facility who tested positive for COVID-19 is "in a low-risk pod, and that is a completely separate pod from where Mr. Alderete and every other federal holding inmate is being housed." Tr. at 12:18-20 (Outler). The United States asserted that "there is no commingling between the low-risk inmates where the positive case was and Mr. Alderete's pod." Tr. at 12:20-22 (Outler).

81.     The United States averred that Alderete does not have any opportunities to interact with the one inmate who tested positive for COVID-19. See Tr. at 13:2-4 (Outler). The United States also noted that no staff members or other inmates have tested positive for COVID-19. See Tr. at 13:6-7 (Outler). The United States argued that, "while it's certainly possible that there will be more positive cases, it's not automatically going to result in an uncontrollable outbreak within the jail population that will create a risk that must be avoided now." Tr. at 13:8-12 (Outler). The United States said that the one positive case in the Santa Fe Detention Center has been contained

and that there is "one positive case in the Cibola County Jail," which the United States argues is an "isolated case." Tr. at 13:15-17 (Outler). The United States reiterated that the COVID-19 pandemic is a "speculative harm," and the United States said that Alderete's characterization of COVID-19 as a "question of not if, but when" is inaccurate. Tr. at 13:20-22 (Outler). According to the United States, "[i]t's not inevitable that we are going to have some kind of uncontrolled outbreak within the jail populations." Tr. at 13:22-24 (Outler). The United States noted that New Mexico officials are "talking about opening society back up again" and argued that these discussions are a "sign that [COVID-19 is] not the dramatic threat that we might have thought it was or that the defendant points out." Tr. at 14:2-9 (Outler). The United States concluded by asserting that the COVID-19 pandemic does not "reach the level of a compelling reason that directly affects Mr. Alderete right now such that you can overcome the other fairly clear reasons that he was detained in the first place." Tr. at 14:10-14 (Outler).

82.     Alderete responded by arguing that, although the United States says no staff members or other inmates at the Santa Fe Detention Center have tested positive for COVID-19, the United States does not provide any information about how many COVID-19 tests have been conducted. See Tr. at 14:19-24 (Gagan). Alderete said that asymptomatic COVID-19 carriers "are thought to be at this point five percent of individuals who test positive for the coronavirus." Tr. at 15:1-2 (Gagan). Alderete noted that the United States says that the COVID-19 pandemic poses a "speculative threat of future harm," and he argued that "waiting until there's an outbreak is too late for people with underlying lung conditions, and it could result in very serious illness and death." Tr. at 15:5-7 (Gagan). Alderete stressed that the Court should "consider the entire known universe of the coronavirus and how it spreads and moves in the community and in small

isolated areas like jails and determine that it is now currently a compelling reason to justify release particularly for an individual with a history of asthma." Tr. at 15:12-18 (Gagan).

83.     The Court noted that it received an email that afternoon from the U.S. Marshals Service stating that there are "no reported COVID-19 cases of inmates in any district of New Mexico facilities." Tr. at 15:22-24 (Court). The USPO said that it has concerns about temporarily releasing Alderete. See Tr. at 16:4-15 (Galaz). The USPO noted that Alderete has "some pretty serious arrests an[d] convictions in his criminal history." Tr. at 16:12-14 (Galaz). The USPO noted that Alderete would be released to his father, that he has lived with his parents "off and on his whole life," and that he was arrested for the federal offense for which he is being prosecuted while living with them. Tr. at 16:10-11 (Galaz). The USPO argued that Alderete "living with his mom and dad [has not] really been a deterrent to criminal activity in the past." Tr. at 16:16-17 (Galaz). Alderete said that he has nothing to add. See Tr. at 17:9 (Gagan). Alderete confirmed for the Court that he did not appeal Magistrate Judge Robbenhaar's Order of Detention Pending Trial. See Tr. at 17:15-21 (Court, Gagan). Alderete also contended that, to his knowledge, his parents do not have a criminal history. See 17:24-18:1 (Gagan).

84.     The Court noted that the federal court system throughout New Mexico and the country is taking the COVID-19 pandemic very seriously and that the U.S. Marshals Service is providing daily updates about the defendants in its custody. See Tr. at 18:6-16 (Court). The Court said it does not think there is a compelling reason to release Alderete that day. See Tr. at 18:17-18 (Court). The Court said that "[t]here may come a day when . . . we have to reevaluate, but it seems today we're plateauing in New Mexico, [and] we don't have an outbreak in the federal detainees." Tr. at 18:19-22 (Court). The Court added that the number of COVID-19 cases in New Mexico "seem[s] to be going down somewhat . . . outside of the Navajo Reservation and San Juan

- 32 -

and McKinley Counties." Tr. at 18:22-24 (Court).  The Court said that it has reviewed Alderete's criminal history and believes that "the Magistrate Judge would reach the same conclusion that I would that [Alderete] is a danger to the community, and he's a flight risk." Tr. at 19:14-16 (Court). The Court noted that nothing has changed that would cause it "to think that there is a condition or a combination of conditions that" would assure Alderete's appearance or protect the community. Tr. at 19:18-20 (Court).  The Court said that the COVID-19 pandemic does not change the analysis of Alderete's circumstances as compared to when Magistrate Judge Robbenhaar ordered his detainment pending trial and that the COVID-19 pandemic does not present a compelling reason to grant temporary release.  See Tr. at 19:21-20:5 (Court).  The Court concluded by saying that it will deny the Motion.  See 19:24-20:1 (Court).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3150, a court may detain a defendant pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence and the burden of proving dangerousness by clear-and-convincing evidence.  See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003). "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f)(2)(alteration added).  See United States v. Hernandez, 778 F. Supp. 2d 1211, 1219-28 (D.N.M. 2011)(Browning, J.)(holding that the Confrontation Clause did not apply to the defendant's pre-trial decision hearing).  To determine whether pretrial detention is warranted, the

judicial officer must consider the statutory factors that 18 U.S.C. § 3142(g) lists:

> **(g)      Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning
>
>> (1)      the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>>
>> (2)       the weight of the evidence against the person;
>>
>> (3)      the history and characteristics of the person, including
>>
>>> (A)      the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>>
>>> (B)      whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>>
>> (4)      the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g) (bold in original).

When a defendant is charged with certain crimes, however, a presumption arises that the

defendant is a flight risk and a danger to the community.  See 18 U.S.C. § 3142(e)(3); United

States v. Villapudua-Quintero, 308 F. App'x 272, 273 (10th Cir. 2009)(unpublished)[7](per curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention for, among other defendants, certain alleged drug offenders). 18 U.S.C. § 3142(e)(3)(A) provides that a presumption of detention arises when "there is probable cause to believe that the person committed" certain drug offenses, specifically "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46." 18 U.S.C. § 3142(e)(3)(A). The Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more." United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993). Accord United States v. Holguin, 791 F. Supp. 2d 1082, 1088 (D.N.M. 2011)(Browning, J.). "'Once the presumption is invoked, the burden of production shifts to the defendant.'" United States v. Holguin, 791 F. Supp. 2d at 1087 (quoting United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)).

To determine whether there are conditions that will reasonably assure the defendant's appearance and the community's safety, a court must consider: (i) the nature and circumstances of

---

[7]United States v. Villapudua-Quintero is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Villapudua-Quintero, United States v. Rebollo-Andino, and United States v. Gonzales have persuasive value with respect to a material issue and will assist the Court in its preparation of this Memorandum Opinion and Order.

the crime charged; (ii) the weight of the evidence against the defendant; (iii) the defendant's history

and characteristics, including family ties, employment, financial resources, community ties, drug

or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the

community or to an individual that release would pose.  See 18 U.S.C. § 3142(g).  "Should the

defendant satisfy his or her burden of production under 18 U.S.C. § 3142(f), the United States

must then show by a preponderance of the evidence that the defendant presents a risk of flight, or

by clear-and-convincing evidence that the defendant presents a danger to the community."  United

States v. Holguin, 791 F.Supp.2d at 1087 (citing United States v. Mercedes, 254 F.3d 433, 436 (2d

Cir. 2001); United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding

risk-of-flight and danger to the community always remains with the government.")).  Notably,

however, even if the defendant meets his or her burden of production under 18 U.S.C. § 3142(f),

"the presumption remains a factor for consideration by the district court in determining whether to

release or detain."  United States v. Stricklin, 932 F.2d at 1355.  Accord United States v. Mercedes,

254 F.3d at 436; United States v. Ramos, No. CR 15-3940 JB, 2016 WL 9021831, at *13-14

(D.N.M. Dec. 30, 2016)(Browning, J.).

### LAW REGARDING THE DISTRICT COURT'S STANDARD OF REVIEW OF A MAGISTRATE JUDGE'S DETENTION ORDER OR RELEASE ORDER UNDER 18 U.S.C. § 3145(a)-(b)

Section 3145(a)-(b) of Title 18 of the United States Code provides that a "court having

original jurisdiction over the offense" may review a Magistrate Judge's detention order or release

order.  18 U.S.C. § 3145(a).  See 18 U.S.C § 3145(b).  "The standard of review for the district

court's review of a Magistrate Judge's detention or release order under § 3145(a) is de novo."

United States v. Cisneros, 328 F.3d at 616 n.1.  "When the district court acts on a motion to revoke

or amend a magistrate's pretrial detention order, the district court acts de novo and must make an

independent determination of the proper pretrial detention or conditions for release." United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992). See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of a Magistrate Judge's order setting bond is de novo); United States v. Hernandez, No. CR 18-0201 JB\KK, 2018 WL 6050635, at *17 (D.N.M. Nov. 19, 2018)(Browning, J.)("Conducting a de novo review, the Court agrees with [the Magistrate Judge] that, although [the defendant] need be only either a flight risk or a danger to the community, [the defendant] is both a flight risk and a danger to the community."); United States v. Castanon-Perez, 347 F. Supp. 3d 661, 667 (D.N.M. 2018)(Browning, J.)("Conducting a de novo review, the Court agrees with the United States that [the defendant] is a flight risk and that there is no combination of release conditions that would ensure her appearance.").

### LAW REGARDING THE DISTRICT COURT'S REVIEW OF A MAGISTRATE JUDGE'S DETENTION ORDER OR RELEASE ORDER UNDER 18 U.S.C. § 3142(f)

Section 3142(f) of Title 18 of the United States Code governs one avenue through which a judicial officer may reopen a detention hearing and reconsider a detention order. Section 3142(f) states:

> **(f)    Detention hearing. --** The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community . . . .
>
> . . . .
>
>        . . . . The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f) (bold in original).  The Tenth Circuit has noted that § 3142(f) "applies to reconsideration of a detention or release order by the same judicial officer who entered the initial order."  United States v. Cisneros, 328 F.3d at 614.  Moreover, "reconsideration is permissible under this section only when there is new information that would materially influence the judgment about whether there are conditions of release which will reasonably assure that the defendant will not flee and will not harm any other person or the community."  United States v. Cisneros, 328 F.3d at 614.

In United States v. Cisneros, a federal grand jury in New Mexico returned a seventeen-count indictment against members of an alleged criminal enterprise known as the Cisneros Organization.  See 328 F.3d at 612.  The indictment named the defendant in two of the counts -- which alleged conspiracy to murder under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), and a Stolen Vehicle Conspiracy, see 18 U.S.C. §§ 511, 2312, 2313, 2321 -- and police arrested the defendant in Phoenix, Arizona, where she resided.  See United States v. Cisneros, 328 F.3d at 612.  At the defendant's detention hearing in Phoenix, the Honorable Lawrence O. Anderson, then-United States Magistrate Judge for the United States District Court for the District of Arizona, denied the United States' request to detain the defendant pending trial, because Magistrate Judge Anderson concluded that "the government had not sustained its burden of proof by a preponderance of the evidence that [the defendant] was a serious flight risk, nor had it sustained its burden of proof by clear and convincing evidence that [the defendant] was a danger to the community."  328 F.3d at 612 (citing 18 U.S.C. § 3142(e)-(g)).  Magistrate Judge Anderson also ordered that the defendant appear in Albuquerque to be arraigned on the indictment's charges in the District of New Mexico.  See United States v. Cisneros, 328 F.3d at 612.

At the defendant's arraignment, the Honorable Don J. Svet, then-United States Magistrate

Judge for the United States District Court for the District of New Mexico, adopted Magistrate

Judge Anderson's release order and release conditions.  See 328 F.3d at 612-13.  About one month

later, the United States moved to revoke the defendant's release order and have her detained

pending trial.  See 328 F.3d at 613.  Based on new evidence that the United States presented,

Magistrate Judge Svet determined that the defendant "was both a flight risk and a danger to the

community and ordered that she be detained pending trial."  328 F.3d at 613.  The defendant then

appealed Magistrate Judge Svet's order, and the Honorable Cristina Armijo, then-Chief United

States District Judge for the United States District Court for the District of New Mexico, heard the

appeal.  See 328 F.3d at 613.  After reviewing Magistrate Judge Svet's detention order de novo,

Chief Judge Armijo concluded that the United States

> had proved by clear and convincing evidence that no conditions of release could be
> imposed on [the defendant] that would reasonably assure the safety of the
> community and that the government had proved by a preponderance of the evidence
> that [the defendant] posed a serious risk of flight such that no conditions of release
> would reasonably assure [the defendant's] presence at trial.

328 F.3d at 613.  The defendant then appealed Chief Judge Armijo's order to the Tenth Circuit.

See United States v. Cisneros, 328 F.3d at 613.

The Tenth Circuit concluded that § 3142(f) was not a proper basis for the United States'

motion requesting revocation of release, because "[r]evocation of a prior release order under

§ 3142(f) is available only when the review of a detention or release order is being conducted by

the same judicial officer who entered the order and when new, material information is available."

328 F.3d at 614.  The Tenth Circuit noted that the United States' motion "did not cite any statutory

provision as the basis for the motion.  The parties have assumed in their arguments before us that

§ 3142(f) provided the basis for the government's motion seeking revocation of the Arizona release

order." 328 F.3d at 614. The Tenth Circuit analyzed § 3142(f)'s text and held that review of a detention or release order is available only when the same judicial officer who entered the original order conducts such review and when new information arises. See United States v. Cisneros, 328 F.3d at 614 ("By its terms, this section applies to reconsideration of a detention or release order by the same judicial officer who entered the initial order."). The Court concluded that the United States could not challenge the release order under § 3142(f), because "the release order that was challenged by the government is the one entered by Judge Anderson in Arizona, and it was reviewed by different judicial officers, Magistrate Judge Svet and District Judge Armijo, in New Mexico." United States v. Cisneros, 328 F.3d at 614. See id. ("[Section] 3142(f) could not have been the basis of the government's motion or of the review by the New Mexico district court.").[8]

---

[8]The Tenth Circuit concluded that, unlike § 3142(f), § 3145(a) provides "an appropriate basis for the government's motion." United States v. Cisneros, 328 F.3d at 615. The Tenth Circuit reasoned:

> This section covers precisely the circumstances of this case. [The defendant] was ordered released by Judge Anderson in Arizona, who is "a magistrate judge, or . . . a person other than a judge of a court having original jurisdiction over the offense . . . ." [18 U.S.C. § 3145(a)]. The government filed its revocation motion in the United States District Court for the District of New Mexico, which is "the court having original jurisdiction over the offense" because the District of New Mexico is the district in which the indictment charging Cisneros was returned and in which the prosecution is pending. See United States v. El Edwy, 272 F.3d 149, 154 (2d Cir. 2001); United States v. Torres, 86 F.3d 1029, 1031 (11th Cir. 1996). Therefore, we construe the government's motion as having been made pursuant to § 3145(a)(1). See United States v. Jones, 804 F. Supp. 1081, 1090 (S.D. Ind. 1992).

United States v. Cisneros, 328 F.3d at 615. The Tenth Circuit held that "[t]he text of § 3145(a) supports the conclusion that a motion to revoke a magistrate judge's release order should be ruled on directly by a district judge." United States v. Cisneros, 328 F.3d at 615. The Tenth Circuit thus concluded that Magistrate Judge Svet "had no authority to rule on the government's motion to revoke the Arizona magistrate judge's release order," but Chief Judge Armijo had authority to review the release order under § 3145(a). United States v. Cisneros, 328 F.3d at 616. The Tenth Circuit also noted that § 3145(a) "requires that the revocation motion be filed with the court having

Because the Tenth Circuit determined that § 3142(f) did not provide a basis for review of Magistrate Judge Anderson's release order, the Tenth Circuit did not reach the issue "whether the evidence introduced by the government before Judge Svet constituted new, material information as required by § 3142(f) before a detention hearing can be reopened." United States v. Cisneros, 328 F.3d at 614. Accordingly, a district judge may not review a Magistrate Judge's detention order or release order based on new information under § 3142(f) -- only the judicial officer who "hold[s] a [detention] hearing" may then "reopen[ the hearing], before or after a determination by the judicial officer, [or] at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing . . . ." 18 U.S.C. § 3142(f). See United States v. Ontiveros, No. 11-cr-00214-PAB, 2012 WL 13063630, at *1 (D.N.M. Feb. 21, 2012)(Brimmer, J.)("The Tenth Circuit has interpreted § 3142(f) to require that the same judge who conducted the detention hearing determine whether re-opening the hearing is appropriate." (citing United States v. Cisneros, 328 F.3d at 614)).

---

original jurisdiction over the offense, but unlike § 3142(f), § 3145 does not require that new information be available before a release or detention order can be reconsidered and revoked." 328 F.3d at 614.

    After the Tenth Circuit concluded that § 3145(a), but not § 3142(f), provides a basis for a district court to review a magistrate judge's release order, the Tenth Circuit turned to "whether the district court properly concluded that the Arizona order should be revoked and [the defendant] detained pending trial." 328 F.3d at 616. The Tenth Circuit reviewed the weight of the evidence against the defendant for each of the 18 U.S.C. § 3142(g) factors on which Chief Judge Armijo based her conclusion that the defendant posed a danger to the community and a risk of nonappearance, thus revoking Magistrate Judge Anderson's release order. See United States v. Cisneros, 328 F.3d at 618-19. Ultimately, the Tenth Circuit concluded that "[t]he results of [Chief Judge Armijo's] hearing and the previously submitted evidence support Judge Armijo's conclusion that the government established that no condition or combination of conditions of release would reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community." 328 F.3d at 617. The Tenth Circuit thus affirmed Chief Judge Armijo's order revoking Magistrate Judge Anderson's release order under § 3145(a). See United States v. Cisneros, 328 F.3d at 619.

In <u>United States v. Anaya</u>, 376 F. Supp. 2d 1261 (D.N.M. 2005)(Browning, J.), the Court noted that reconsideration under § 3142(f) and review by the presiding district judge under § 3145(a)-(b) are the "'the two avenues through which a release or detention order can be reconsidered prior to review on appeal by a court of appeals.'"  <u>United States v. Anaya</u>, 376 F. Supp. 2d at 1262 (quoting <u>United States v. Cisneros</u>, 328 F.3d at 614).  Relying on <u>United States v. Cisneros</u>, the Court emphasized that, under § 3142(f), "[o]nly new, material information justifies reconsideration . . . and 'the same judicial officer who entered the initial order' must hear the reconsideration."  376 F. Supp. 2d at 1262-63 (quoting <u>United States v. Cisneros</u>, 328 F.3d at 614). The Court explained that "[t]his straightforward reading of the statute serves the salutary purpose of preventing judge shopping by either party and prevents magistrate judges from being placed in the uncomfortable position of second-guessing their fellow magistrate judges, or district judges of second-guessing magistrates with information that the magistrates did not have." <u>United States v. Anaya</u>, 376 F. Supp. 2d at 1263 (internal quotation marks omitted).  "Therefore, to the extent that [a party] seeks to reopen [a] detention hearing based on new evidence pursuant to Section 3142(f), such motion must be heard by the same judge who conducted the detention hearing." <u>United States v. Whiteskunk</u>, No. 10-CR-00443-PAB, 2010 WL 5103031, at *1 (D. Colo. Dec. 9, 2010)(Brimmer, J.)(citing <u>United States v. Anaya</u>, 376 F. Supp. 2d at 1626-63).

## LAW REGARDING TEMPORARY RELEASE UNDER 18 U.S.C. § 3142(i) BECAUSE OF THE COVID-19 PANDEMIC

Section 3142(i) of Title 18 of the United States Code provides:

      **(i)**     **Contents of Detention Order. --** In a detention order issued under subsection (e) of this section, the judicial officer shall --

          (1)     include written findings of fact and a written statement of the reasons for the detention;

(2)     direct that the person be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(3)     direct that the person be afforded reasonable opportunity for private consultation with counsel; and

(4)     direct that, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the person is confined deliver the person to a United States marshal for the purpose of an appearance in connection with a court proceeding.

The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. 3142(i) (bold in original).  "The relief authorized by § 3142(i) is to be used 'sparingly.'" United States v. McKnight, CR18-16 TSZ 2020 WL 1872412, at *2 (W.D. Wash. April 15, 2020)(Zilly, J.)(quoting United States v. Boatwright, Case No. 2:19-cr-00301-GMN-DJA, 2020 WL 1639855, at *4 (D. Nev. April 2, 2020)(Koppe, M.J.)).  Moreover, "[t]he defendant bears the burden of proof under this provision."  United States v. Sondergard, No. CR 19-4048 MV\KK, 2020 WL 195519, at *1 (D.N.M. April 23, 2020)(Khalsa, M.J.)(citing United States v. Clark, Case No. 19-40068-01-HLT, 2020 WL 1446895, at *2 (D. Kan. March 25, 2020)(Mitchell, M.J.); United States v. Reese, No. CR 11-2294 RB, 2012 WL 13080791, at *2 (D.N.M. April 2, 2012)(Brack, J.)).

"Most courts addressing a motion for temporary release under § 3142(i) have done so in the context of evaluating the necessity of the defendant assisting with preparing his or her defense." United States v. Clark, 2020 WL 1446895, at *2 (citing United States v. Buswell, Criminal No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 13, 2013)(Hanna, M.J.); United States v.

Dupree, 833 F. Supp. 2d 241, 247 (E.D.N.Y. 2011)(Matsumoto, J.); United States v. Hazelwood, No. 1:10 CR 150, 2011 WL 680178, at *3 (N.D. Ohio Feb. 16, 2011)(Oliver, J.); United States v. Jeffries, No. 3:10-CR-100, 2011 WL 182867, at *4 (E.D. Tenn. Jan. 20, 2011)(Shirley, M.J); United States v. Petters, Crim. No. 08-364 (RHK/AJB), 2009 WL 205188, at *2 (D. Minn. Jan. 28, 2009)(Kyle, J.); United States v. Birbragher, No. 07-CR-1023-LRR, 2008 WL 2246913, at *1 (N.D. Iowa May 29, 2008)(Reade, J.)).  "Courts considering whether pretrial release is "necessary" under § 3142(i) have considered: (1) time and opportunity the defendant has to prepare for the trial and to participate in his defense; (2) the complexity of the case and volume of information; and (3) expense and inconvenience associated with preparing while incarcerated."  United States v. Boatwright, 2020 WL 1639855, at *4 (quoting 18 U.S.C. § 3142(i), and citing United States v. Cecrle, No. 2:12-CR-400-JAD-GWF, 2014 WL 31674, at *4 (D. Nev. Jan. 13, 2014)(Dorsey, J.)). In United States v. Stephens, 15-cr-95 (AJN), 2020 WL 1295155 (S.D.N.Y. March 19, 2020)(Nathan, J.), for example, the Honorable Alison J. Nathan, United States District Judge for the United States District Court for the Southern District of New York, held that the COVID-19 pandemic in New York City, New York, "constitute[s] a compelling reason" under § 1342(i) in part because of "the obstacles the current public health crisis poses to the preparation of the Defendant's defense."  United States v. Stephens, 2020 WL 1295155, at *3.  Judge Nathan states that, aside from a defendant's need to assist in preparing his or her defense, "[t]here is limited authority as to when temporary release is justified under § 3142(i) based on 'another compelling reason,' although a defendant's medical condition may present that compelling reason in a particular case."  United States v. Clark, 2020 WL 1446895, at *2 (quoting 18 U.S.C. § 3142(i), and citing United States v. Rebollo-Andino, 312 F. App'x 346, 348 (1st Cir. 2009)(unpublished)).

Several courts recently have addressed whether the COVID-19 pandemic constitutes "another compelling reason" to justify temporary release under § 3142(i).  18 U.S.C. § 3142(i). See, e.g., United States v. McKnight, 2020 WL 1872412, at *2-3; United States v. Clark, 2020 WL 1446895, at *3; United States v. Boatwright, 2020 WL 1639855, at *4; United States v. Sondergard, 2020 WL 195519, at *1.  Many courts have applied the four factors that the Honorable Judge Mitchell announced in United States v. Clark.  See, e.g., United States v. McKnight, 2020 WL 1872412, at *2-3; United States v. Boatwright, 2020 WL 1639855, at *4; United States v. Miller, CR 20-12-BLG-DLC-1, 2020 WL 1864633, at *2-3 (D. Mont. April 14, 2020)(Cavan, M.J.); United States v. Hussein, Case No. 20-mj-0089 (HB), 2020 WL 1853656, at *4 (D. Minn. April 13, 2020)(Bowbeer, M.J.); United States v. Lake, Criminal Action No. 19-cr-00500-RM, 2020 WL 1852435, at *3 (D. Colo. April 13, 2020)(Crews, M.J.); United States v. Dodd, Case No. 20-cr-0016 (NEB/HB), 2020 WL 1547419, at *3 (D. Minn. April 1, 2020)(Bowbeer, M.J).  These four factors include:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

United States v. Clark, 2020 WL 1446895, at *3.  In United States v. Clark, Magistrate Judge Mitchell noted that she "will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a 'compelling reason' exists such that temporary release is 'necessary.'"  2020 WL 1446895, at *3 (quoting 18 U.S.C. § 3142(i)).

The Court concludes that, where a Magistrate Judge issues a defendant's pretrial detention order, the Court lacks the authority to subsequently order temporary release under § 3142(i).  The Tenth Circuit has not weighed in on whether a district judge has the authority to grant temporary

release to a defendant when the district judge did not hold the original detention hearing or order that the defendant be detained pending trial.  Based on the Tenth Circuit's straightforward reading of § 3142(f) in United States v. Cisneros, and §§ 3142(f) and (i)'s textual similarities, the Court believes that § 3142(i) allows only the judicial officer who issues a pretrial detention order to order subsequently a defendant's temporary release.  Section 3142(i) governs "detention order[s] issued under subsection (e)," and it outlines what "the judicial officer shall" include in his or her detention order.  18 U.S.C. § 3142(i).  Section 3142(i) states that, after the judicial officer issues a detention order, "[t]he judicial officer may, by subsequent order, permit the temporary release" of the defendant "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."  18 U.S.C. § 3142(i).  The Tenth Circuit has not analyzed -- nor has any other court of which the Court is aware -- whether "[t]he judicial officer" who considers whether to order temporary release must be the same person as "the judicial officer" who issued the original detention order pursuant to § 3142(i)'s requirements.  18 U.S.C. § 3142(i).

Many of the cases cited above involve a magistrate judge who previously ordered that the defendant be detained pending trial and then subsequently considered granting temporary release under § 3142(i).  See, e.g., United States v. Dodd, 2020 WL 1547419, at *1-3; United States v. Lake, 2020 WL 1852435, at *1-3; United States v. Sondergard, 2020 WL 195519, at *1-2; United States v. Clark, 2020 WL 1446895, at *1-3; United States v. Miller, 2020 WL 1864633, at *1-3; United States v. Boatwright, 2020 WL 1639855, at *1-4.  Thus, there was no issue whether the Magistrate Judge could consider granting temporary release to a defendant whom the same Magistrate Judge ordered detained pending trial.  Some of the cases, however, involve a district judge considering temporary release under § 3142(i) after a Magistrate Judge initially ordered that

the defendant be detained pending trial.  See, e.g., United States v. McKnight, 2020 WL 1872412, at *2-3; United States v. Stephens, 2020 WL 1295155, at *1-3; United States v. Dupree, 833 F. Supp. 2d 241, 241-47; United States v. Hazelwood, 2011 WL 680178, at *1-3; United States v. Petters, 2009 WL 205188, at *1-2.  In these cases, the issue whether a district judge has authority to grant temporary release when a different judge initially held the detention hearing and ordered detention pending did not arise, although the Tenth Circuit's reasoning in United States v. Cisneros did not bind any of the courts.[9]

A straightforward reading of § 3142(i) -- and its textual similarity to § 3142(f) -- strongly suggests that the judicial officer who considers granting temporary release under § 3142(i) must be the same judicial officer who ordered that the defendant be detained pending trial.  In United States v. Cisneros, the Tenth Circuit held that "[r]evocation of a prior release order under § 3142(f) is available only when the review of a detention or release order is being conducted by the same judicial officer who entered the order and when new, material information is available."  328 F.3d at 614.  Because the Tenth Circuit interpreted each reference to "the judicial officer" in § 3142(f) as referring to the same person, 18 U.S.C. § 3142(f), it is plausible that the Tenth Circuit would -- if presented with this issue -- interpret each reference to "the judicial officer" in § 3142(i) as referring to the same person, 18 U.S.C. § 3142(i).  The consistent references to "the judicial officer" are notable.  18 U.S.C. § 3142(i) (emphasis added).

In United States v. Stephens, Judge Nathan concluded that the COVID-19 pandemic is a compelling reason to release temporarily the defendant under § 3142(i), after a different judge had

_____

[9]In United States v. McKnight, however, the Honorable Thomas S. Zilly, United States District Judge for the United States District Court for the Western District of Washington, noted that "the magistrate judge who issued the Detention Order . . . ha[d] retired," and thus "referral of [the] matter [was] not possible."  2020 WL 1872412, at *1.

ordered that the defendant be detained pending trial.  See 2020 WL 1295155, at *1-3.  Judge

Nathan is not bound by the Tenth Circuit, and, although the United States did not challenge Judge

Nathan's authority to grant temporary release under § 3142(i), the Court notes that United States

v. Stephens' analysis of § 3142(i) misquotes -- albeit slightly -- the statute's text.  United States v.

Stephens states: "18 U.S.C. § 3142(i) provides that, where a detention order has been issued, 'a

judicial officer may, by subsequent order, permit the temporary release . . . .'"  2020 WL 1295155,

at *2 (quoting 18 U.S.C. § 3142(i))(emphasis added).  In § 3142(i), as in § 3142(f), every mention

of "judicial officer" is preceded by the article "the," not "a."  No courts have weighed in on this

textual subtlety, and, although the Tenth Circuit has not analyzed this issue, the Court concludes

that it lacks authority to consider whether something is a "compelling reason" that necessitates

temporary release when a different judge is the judicial officer who originally issued a defendant's

pretrial detainment order.  18 U.S.C. § 3142(i).

     The Court notes, however, that, although §§ 3142(f) and 3142(i) are textually similar, they

differ procedurally.  Section 3142(f) allows a defendant to "reopen[]" his or her detention hearing,

18 U.S.C. § 3142(f), where "new, material information justifies reconsideration . . . and 'the same

judicial officer who entered the initial order'" hears the reconsideration, United States v. Anaya,

376 F. Supp. 2d at 1262-63 (quoting United States v. Cisneros, 328 F.3d at 614).  Section 3142(i),

on the other hand, is "an alternative to reopening the detention hearing."  United States v.

McKnight, 2020 WL 1872412, at *2.  In United States v. Anaya, the Court noted that the Tenth

Circuit's "straightforward reading of the statute" in United States v. Cisneros "serves the salutary

purpose of preventing judge shopping by either party and prevents magistrate judges from being

placed in the uncomfortable position of second-guessing their fellow magistrate judges, or district

judges of second-guessing magistrates with information that the magistrates did not have."  United

States v. Anaya, 376 F. Supp. 2d at 1263.  During an initial detention hearing, the judicial officer

must determine "whether any condition or combination of conditions . . . will reasonably assure

the appearance of [a defendant] as required and the safety of any other person and the community."

18 U.S.C. § 3142(f).  When a defendant reopens his or her detention hearing because of new

information, the same judicial officer must conduct the exact same analysis, taking into

consideration the new information.  See 18 U.S.C. § 3142(f).

In contrast, a defendant's motion for temporarily release under § 3142(i) does not require

-- by its terms -- that a judicial officer reopen the defendant's detention hearing.  See United States

v. McKnight, 2020 WL 1872412, at *2.  Whether "new" information has a material bearing on the

defendant's risk of nonappearance and danger to the community is a distinct question from whether

a "compelling reason" warrants temporary release under § 3142(i).   18 U.S.C. § 3142(i).   The

decision whether to release a defendant temporarily under § 3142(i) is, however, intertwined with

the factors that the initial judicial officer considered at the defendant's detention hearing, because

the risk of nonappearance and danger to the community are front and center in the judicial officer's

mind as he or she decides how compelling the defendant's reason for temporary release is.  These

factors never go away.  The Court further notes that, for most defendants who request temporary

release because of a compelling reason, the compelling reason is often new information that was

not available at the pretrial detention hearing -- otherwise, the defendant likely would have asserted

the reason for release at the detention hearing.  Despite the minor differences in §§ 3142(f) and

(i)'s procedural applications, the Court concludes that § 3142(i)'s textual similarity to § 3142(f),

and the Tenth Circuit's reasoning in United States v. Cisneros, support the conclusion that only

the judicial officer who originally issued a defendant's pretrial detention order may subsequently

order temporary release.

- 49 -

## ANALYSIS

While the Court is mindful of the serious dangers and health risks that the COVID-19 pandemic presents for prison inmates and detainees, neither § 3142(f) nor § 3142(i) supplies an adequate basis for releasing Alderete pending trial.  First, the Court concludes that § 3142(f) does not give the Court the authority to reopen Alderete's detention hearing, because Magistrate Judge Robbenhaar conducted Alderete's detention hearing and ordered that Alderete be detained pending trial, and, under Tenth Circuit caselaw, only Magistrate Judge Robbenhaar can reopen Alderete's detention hearing and consider new information.  Even if the Court had the authority to reopen Alderete's detention hearing, the Court would not release Alderete under § 3142(f), because the COVID-19 pandemic does not have a "material bearing" on whether the Court can fashion conditions of release for Alderete that will assure his appearance and protect the community. 18 U.S.C. § 3142(f).  Second, the Court concludes that, based on §§ 3142(f) and (i)'s textual similarity and the Tenth Circuit's interpretation of § 3142(f), the Court lacks the authority to order temporary release under § 3142(i), because Magistrate Judge Robbenhaar is the judicial officer who originally issued Alderete's pretrial detention order.  Even if the Court had the authority under § 3142(i) to grant Alderete's request for temporary release, the Court concludes that the COVID-19 pandemic and its potential risks to Alderete's health are not "compelling reason[s]" necessitating Alderete's temporary release under § 3142(i), because, at this time, Alderete offers no more than generalized fear and speculation that detention pending trial puts him at heightened risk of COVID-19 infection.  Accordingly, the Court will deny Alderete's Motion.

I.     **THE COURT LACKS THE AUTHORITY TO RELEASE ALDERETE UNDER § 3142(f), AND, EVEN IF THE COURT HAD SUCH AUTHORITY, RELEASE WOULD NOT BE WARRANTED, BECAUSE THE COVID-19 PANDEMIC DOES NOT HAVE A MATERIAL BEARING ON WHETHER THERE ARE CONDITIONS OF RELEASE THAT WOULD ASSURE ALDERETE'S <u>APPEARANCE AND PROTECT THE COMMUNITY</u>.**

Alderete argues that the "circumstances that existed when the Court entered its detention order have now changed." Motion at 6. According to Alderete, "changed circumstances suggest conditions of release could assure community safety and his appearance." Motion at 10. Alderete says that, if the Court releases him from custody, he will focus "on caring for his family during these difficult and novel circumstances." Motion at 10. Alderete asserts that he will not pose a danger to the community, because Pretrial Services will monitor him, and because "he would seriously risk his health were he to violate social distancing requirements." Motion at 10-11. Alderete contends that, if the Court releases him to his father's custody, he "can be regularly monitored by electronic monitoring equipment, and his movements would be limited to essential tasks only -- per order of the Court and per current stay-at-home restrictions in New Mexico." Motion at 11.

The United States counters that the COVID-19 pandemic does not make Alderete "less dangerous or more likely to appear." Response at 1. According to the United States, "the pandemic has no 'material bearing' on the Court's original balancing of the § 1342(g) factors supporting detention." Response at 1 (quoting 18 U.S.C. § 3142(f)). The United States also argues that, if the COVID-19 pandemic had been occurring at the time of Alderete's detention hearing, it "would not have changed the outcome then and it remains immaterial now." Response at 7. The United States argues that Alderete does not attempt "to argue that the COVID-19 pandemic, to the extent it has affected [him] at all, changes [his] criminal history or makes him less dangerous."

Response at 7.  The United States also notes that two of the charges against Alderete -- violations of 18 U.S.C. §§ 841(a)(1) and 924(c)(1)(A)(i) -- "carry a rebuttable presumption of pretrial detention."  Response at 7 (citing 18 U.S.C. § 3142(e)(3)(A)-(B)).  The United States avers that the Motion does not rebut this presumption.  See Response at 7.  The United States argues that Alderete provides no reasons why the Court should reconsider the "earlier conclusion that [he] is a danger to the community" and so, the Court should deny the Motion.  Response at 7.

The Court concludes that it lacks authority to release Alderete under § 3142(f), because the Court cannot "reopen[]" a detention hearing that another "judicial officer" -- Magistrate Judge Robbenhaar -- held.  18 U.S.C. § 3142(f).  Section 3142(f) provides:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f).  In United States v. Cisneros, the Tenth Circuit held that "[r]evocation of a prior release order under § 3142(f) is available only when the review of a detention or release order is being conducted by the same judicial officer who entered the order and when new, material information is available."  328 F.3d at 614.  The Court analyzed United States v. Cisneros in United States v. Anaya, and the Court explained that the Tenth Circuit's "straightforward reading of the statute serves the salutary purpose of preventing judge shopping by either party and prevents magistrate judges from being placed in the uncomfortable position of second-guessing their fellow magistrate judges, or district judges of second-guessing magistrates with information that the magistrates did not have."  United States v. Anaya, 376 F. Supp. 2d at 1263 (internal quotation marks omitted).  Here, Magistrate Judge Robbenhaar issued the June 17, 2019, detention order that

Alderete challenges.  See FOF ¶ 23, at 8.  Although the COVID-19 pandemic had not yet emerged at the time of Alderete's detention hearing, the Court lacks the authority to reopen Alderete's detention hearing and determine whether the pandemic is new information that warrants releasing Alderete pending trial.  To request a reopening of his detention hearing under § 3142(f), Alderete's request for release "must be heard by the same judge who conducted the detention hearing." United States v. Whiteskunk, 2010 WL 5103031, at *1.  See United States v. Cisneros, 328 F.3d at 614 (noting that two judges reviewed a release order that a different judge issued, and concluded that "§ 3142(f) could not have been the basis of the government's motion or of the review by the New Mexico district court").  The Court did not conduct the detention hearing, and, thus, § 3142(f) cannot be the basis of Alderete's Motion or of the Court's review of the June 17, 2019, detention order.

If the Court had the authority to reopen Alderete's detention hearing under § 3142(f), the Court would hold that § 3142(f) does not offer Alderete the relief that he seeks.  Alderete's primary reasons for release are that: (i) he has had asthma since childhood; (ii) he has been hospitalized three times for asthma-related complications; and (iii) he is pre-diabetic, and jail medical staff regularly monitor his blood sugar.  See FOF ¶ 17, at 7; Motion at 6.  Although some of these conditions put Alderete's health at risk, see FOF ¶ 35, at 10, none of them constitutes new information -- the COVID-19 pandemic and its concomitant health risks are the new information "that was not known to the movant at the time of the hearing," 18 U.S.C. § 3142(f).  The risk of harm to a defendant does not, however, factor into the § 3142(f) analysis, which focuses on a defendant's risk of nonappearance and community safety.  See United States v. Clark, 2020 WL 1446895, at *3 ("A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on . . . [the

defendant's] risk of nonappearance or [] risk of harm to any others or the community."). Alderete asserts that he will not pose a danger to the community, because Pretrial Services will monitor him, <u>see</u> Motion at 10, but this information is not new and does not warrant release. Alderete has not shown that Pretrial Services was any less capable of monitoring him at the time of his detention hearing than it is now. Moreover, Alderete has an extensive criminal history and record of failure to appear. <u>See</u> FOFs ¶¶ 13-14, 16, at 3-7; Bail Report at 2, 4-18. He also has a record of non-compliance with conditions of pretrial release, probation, and parole. <u>See</u> FOF ¶ 15, at 2; Bail Report at 2. Magistrate Judge Robbenhaar thus ordered that Alderete be detained pending trial. <u>See</u> Addendum at 1; Order of Detention Pending Trial at 1.

Alderete's last argument for release is that, if released, he will not leave his father's home or be a danger to the community, because "he would seriously risk his health were he to violate social distancing requirements." Motion at 10-11. If the Court were to determine that New Mexico's social distancing requirements have a material bearing on a defendant's danger to the community or risk of nonappearance, then every defendant awaiting trial would be entitled to release under § 3142(f), because these requirements would affect every defendant upon release. Release on this basis is a stretch too far for the § 3142(f) analysis. The Court concludes that, if it had the authority to release Alderete under § 3142(f), Alderete has not stated with specificity any new information that has a material bearing on his particular risks of nonappearance or of danger to the community. Accordingly, to the extent that Alderete's Motion relies on § 3142(f) as a basis for release, the Court denies the Motion.

II.    **THE COURT LACKS THE AUTHORITY TO GRANT ALDERETE'S REQUEST FOR TEMPORARY RELEASE, BECAUSE MAGISTRATE JUDGE ROBBENHAAR -- AND NOT THE COURT -- IS THE JUDICIAL OFFICER WHO ORIGINALLY ISSUED ALDERETE'S PRETRIAL DETENTION ORDER.**

The Court concludes that § 3142(i) does not give a district judge the authority to grant temporary release to a defendant when the district judge did not hold the original detention hearing or order that the defendant be detained pending trial.  Section 3142(i) provides:

> **(i)    Contents of Detention Order. --** In a detention order issued under subsection (e) of this section, the judicial officer shall --
>
>> (1)    include written findings of fact and a written statement of the reasons for the detention;
>>
>> (2)    direct that the person be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;
>>
>> (3)    direct that the person be afforded reasonable opportunity for private consultation with counsel; and
>>
>> (4)    direct that, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the person is confined deliver the person to a United States marshal for the purpose of an appearance in connection with a court proceeding.
>
> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. 3142(i) (bold in original).  The Tenth Circuit has not analyzed -- nor has any other court of which the Court is aware -- whether "[t]he judicial officer" who considers whether to order temporary release must be the same person as "the judicial officer" who issued the original detention order pursuant to § 3142(i)'s requirements.  18 U.S.C. § 3142(i).  In United States v. Cisneros, the Tenth Circuit held that "[r]evocation of a prior release order under § 3142(f) is

- 55 -

available only when the review of a detention or release order is being conducted by the same judicial officer who entered the order and when new, material information is available." 328 F.3d at 614. Because the Tenth Circuit interpreted each reference to "the judicial officer" in § 3142(f) as referring to the same person, 18 U.S.C. § 3142(f), it is plausible that the Tenth Circuit would -- if presented with this issue -- interpret each reference to "the judicial officer" in § 3142(i) as referring to the same person, 18 U.S.C. § 3142(i). The repeated references to "<u>the</u> judicial officer" are notable. 18 U.S.C. § 3241(i) (emphasis added). In any case, the Court concludes that interpreting the phrase "the judicial officer" consistently is the best textual reading of the statute's language, and, thus, the Court will adopt it. 18 U.S.C. § 3142(i). In §§ 3142(f) and (i), the article "the" precedes every mention of "judicial officer." The Court is not aware of any courts that have discussed this textual subtlety. In <u>United States v. Anaya</u>, the Court analyzed <u>United States v. Cisneros</u> and § 3142(f)'s text, and the Court explained that the Tenth Circuit's "straightforward reading of the statute serves the salutary purpose of preventing judge shopping by either party . . . ." <u>United States v. Anaya</u>, 376 F. Supp. 2d at 1263 (internal quotation marks omitted). Applying the Tenth Circuit's "straightforward reading" of § 3142(f) to § 3142(i), <u>United States v. Anaya</u>, 376 F. Supp. 2d at 1263, the Court concludes that, because Magistrate Judge Robbenhaar -- and not the Court -- is "the judicial officer" who originally issued Alderete's pretrial detention order, only Magistrate Judge Robbenhaar "may, by subsequent order, permit the temporary release of" Alderete. 18 U.S.C. § 3142(i). Thus, to the extent that Alderete seeks temporary release for a compelling reason, Alderete must submit his request to Magistrate Judge Robbenhaar.

III.   **IF THE COURT HAS AUTHORITY TO ORDER TEMPORARY RELEASE UNDER § 3142(i), THE COURT CONCLUDES THAT THE COVID-19 PANDEMIC'S POTENTIAL RISK TO ALDERETE'S HEALTH IS NOT A "COMPELLING REASON" COUNSELING ALDERETE'S TEMPORARY RELEASE, BECAUSE ALDERETE OFFERS NO MORE THAN GENERALIZED FEAR AND SPECULATION THAT DETAINMENT PUTS HIM AT <u>HEIGHTENED RISK OF COVID-19 INFECTION.</u>**

If the Court is incorrect that it lacks authority to order temporary release under § 3142(i), even though Magistrate Judge Robbenhaar issued Alderete's pretrial detention order, the Court concludes that temporary release under § 3142(i) is not warranted, because the COVID-19 pandemic -- and its potential impact on Alderete -- falls short of a "compelling reason."  18 U.S.C. § 3142(i).  In analyzing whether the COVID-19 pandemic's potential risk to Alderete's health is a compelling reason that necessitates temporary release, the Court will consider: (i) the Magistrate Judge's reasons for ordering a defendant's detention; (ii) the defendant's health-related COVID-19 concerns; (iii) whether the proposed release plan mitigates COVID-19's risks to the defendant; and (iv) whether releasing the defendant would risk spreading COVID-19 to others.  <u>See</u> <u>United States v. Clark</u>, 2020 WL 1446895, at *3.  As in <u>United States v. McKnight</u> and <u>United States v. Clark</u>, the Court "'will not necessarily weigh these factors equally, but will consider them as a whole' to determine whether a 'compelling reason' supports [Alderete's] motion under § 3142(i)."  <u>United States v. McKnight</u>, 2020 WL 1872412, at *3 (quoting <u>United States v. Clark</u>, 2020 WL 1446895, at *3)(alteration added).  Alderete "bears the burden of proof under this provision."  <u>United States v. Sondergard</u>, 2020 WL 195519, at *1; <u>United States v. Clark</u>, 2020 WL 1446895, at *2; <u>United States v. Reese</u>, 2012 WL 13080791, at *2.

Alderete argues that his health conditions -- combined with the health risks that the COVID-19 pandemic presents -- constitute a "compelling reason" for temporary relief under § 3142(i).  18 U.S.C. § 3142(i).  <u>See</u> Motion at 6.  Alderete is pre-diabetic, has asthma, and has

been hospitalized for asthma-related complications.  See FOF ¶ 17, at 7; Motion at 6.  Alderete

also argues that he should be released so that he can care for his family, because his father, who is

seventy-three years old, is caring for his eleven-year-old son, and because his family's "financial

situation is increasingly precarious."  Motion at 6.  See FOF ¶ 18, at 7.  In addition, Alderete's

mother lives in a twenty-four-hour care facility and suffers from diabetes and several other chronic

illnesses.  See FOF ¶ 19, at 8; Motion at 6.  At the April 23, 2020, hearing, Alderete asserted that,

although the United States says no staff members at the Santa Fe Detention Center have tested

positive for COVID-19 and only one inmate has tested positive for COVID-19, the United States

has not provided any information about how many COVID-19 tests have been conducted.  See Tr.

at 14:19-24 (Gagan).  Alderete said that asymptomatic carriers of COVID-19 "are thought to be at

this point 5 percent of individuals who test positive for the coronavirus."  Tr. at 15:1-2 (Gagan).

Alderete noted that the United States says that the COVID-19 pandemic poses a "speculative threat

of future harm" and argued that "waiting until there's an outbreak is too late for people with

underlying lung conditions, and it could result in very serious illness and death."  Tr. at 15:5-7

(Gagan).

The United States counters that Alderete "has not shown that the pandemic poses a

meaningful threat to him personally while he is in federal custody."  Response at 1.  The United

States asserts that Alderete's Motion is not "tailored" to his "particular circumstances, but rather

is generic and opportunistic."  Response at 4.  According to the United States, a "speculative,

generalized threat of inmate infection . . . is not a 'compelling reason' for release under 18 U.S.C.

§ 3142(i)."  Response at 4 (quoting 18 U.S.C. § 3142(i)).  The United States asserts that the threat

of COVID-19 spreading amongst New Mexico's federal inmate populations is speculative,

because there are no confirmed COVID-19 cases among New Mexico inmates who, like Alderete,

are in the U.S. Marshals Service's custody.  See Response at 5.  At the hearing, the United States

said that one inmate at the facility has tested positive for COVID-19.  See Tr. at 12:14-20 (Outler);

FOF ¶ 49, at 14.  According to the United States, that inmate is "in a low-risk pod, and that is a

completely separate pod from where Mr. Alderete and every other federal holding inmate is being

housed."  Tr. at 12:18-20 (Outler).  See FOFs ¶¶ 50-51, at 15.  The United States further argued

that "[i]t's not inevitable that we are going to have some kind of uncontrolled outbreak within the

jail populations."  Tr. at 13:22-24 (Outler).

### A.   MAGISTRATE JUDGE ROBBENHAAR'S ORIGINAL GROUNDS FOR ALDERETE'S DETENTION WEIGH HEAVILY AGAINST TEMPORARY RELEASE.

The original grounds for Alderete's detention weigh heavily against temporary release.  At

Alderete's detention hearing, Magistrate Judge Robbenhaar weighed the factors set forth in 18

U.S.C. § 3142(g), and concluded that the United States had proven by "clear and convincing

evidence that no condition or combination of conditions of release will reasonably assure the safety

of any other person and the community."  Order of Detention Pending Trial at 2.  Magistrate Judge

Robbenhaar also concluded that the United States had proven by a "preponderance of evidence

that no condition or combination of conditions of release will reasonably assure [Alderete's]

appearance as required."  Order of Detention Pending Trial at 2.  Magistrate Judge Robbenhaar

ordered that Alderete be detained, because of: (i) the strength of the evidence's weight against

Alderete; (ii) the lengthy period of incarceration if Alderete is convicted; (iii) Alderete's criminal

history;  (iv) Alderete's past criminal activity while on probation, parole, or supervision;

(v) Alderete's history of violence or use of weapons; (vi) Alderete's history of alcohol or substance

abuse; (vii) Alderete's lack of stable employment; (viii) Alderete's past failure to appear in court

as ordered; and (ix) Alderete's past attempts to evade law enforcement.  See Order of Detention Pending Trial at 2-3.

After reviewing the Bail Report and Magistrate Judge Robbenhaar's determinations at the detention hearing, the Court concludes that Alderete is a high-risk defendant.  Because Alderete has been charged with the use, carry, or possession of a firearm in connection with a crime of violence or drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i), see Indictment at 1-3, there is a rebuttable presumption under 18 U.S.C. § 3142(e)(3)(B) that no condition or combination of conditions will reasonably assure his appearance or the safety of any other person or the community, see United States v. Gonzales, 149 F.3d 1192, 1998 WL 321218, at *2 (10th Cir. 1998)(unpublished table opinion)(per curiam)("Under § 3142(e), a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required if there is probable cause to believe the person committed an offense . . . 'under section 924(c).'" (quoting 18 U.S.C. § 924(c))).  The Tenth Circuit instructs that, "[o]nce the presumption under [§ 3142(e)] comes into play, the burden of production, but not persuasion, shifts to the defendant. . . .  The burden of production is not heavy, . . . but in order to rebut the presumption, the defendant must produce some evidence."  United States v. Cook, 880 F.2d 1158, 1162 (10th Cir. 1989).  See United States v. Mercedes, 254 F.3d at 436 (2d Cir. 2001).

Several district courts have determined that § 3142(e)'s rebuttable presumption is relevant to the "compelling reason" analysis under § 3142(i).  18 U.S.C. § 3142(i).  See, e.g., United States v. Clark, 2020 WL 1446895, at *3 (concluding that the defendant did not present a compelling reason for temporary release under § 3142(i) after considering the original grounds for pretrial detention in light of § 3142(e)'s rebuttable presumption, which applied to the defendant); United States v. Hamilton, 2020 WL 1323036, at *2 (concluding that the defendant did not present a

compelling reason for temporary release under § 3142(i), in part, because he "does not seriously endeavor to rebut the presumption that he poses a danger to the community," and he "has not presented evidence to rebut the presumption that he poses risk of flight").  The Court agrees that § 3142(e)'s rebuttable presumption is relevant to determining whether Alderete has presented a compelling reason for temporary release.  First, § 3142(i) states that it applies to "a detention order issued under subsection (e) of this section."  18 U.S.C. § 3142(i).  Section § 3142(e) contains the circumstances in which courts must apply the rebuttable presumption that no conditions can assure that a defendant will not be a danger to the community or a flight risk.  Because § 3142(i) explicitly references § 3142(e), the Court sees no reason to presume that § 3142(e)'s rebuttable presumption is somehow inapposite to determining whether to grant a defendant temporary release under § 3142(i).

Second, § 3142(e)'s rebuttable presumption factored into the Alderete's original grounds for detention, and the original grounds for detention are relevant to the § 3142(i) analysis. Magistrate Judge Mitchell explains:

> [I]f a defendant is seeking temporary release under § 3142(i), the court has already found that pretrial detention was warranted on the grounds that, e.g., no condition or combination of conditions would reasonably assure the defendant would appear as required and/or not pose a risk of harm to others.  These reasons should be taken into consideration in determining whether a defendant has presented such compelling reasons for temporary release that they effectively override or at least sufficiently counterbalance the findings that originally justified the pretrial detention order.

United States v. Clark, 2020 WL 1446895, at *3.  As noted above, Magistrate Judge Robbenhaar has already concluded that the United States proved by clear-and-convincing evidence that no condition or combination of conditions will reasonably assure the community's safety, and by a preponderance of the evidence that no condition or combination of conditions of release will

reasonably assure Alderete's appearance.  See Order of Detention Pending Trial at 2.  Because § 3142(e)'s rebuttable presumption shaped the original grounds for pre-detention release, the Court concludes that the rebuttable presumption is also relevant to deciding whether to grant Alderete temporary release under § 3142(i).  After all, if the Court grants Alderete temporary release, the risks of nonappearance and danger to the community do not disappear.  Thus, in weighing the original grounds for release to determine if Alderete has presented a compelling reason for temporary release, the Court will not ignore § 3142(e)'s presumption against Alderete.

The evidence against Alderete is strong.  The Indictment arose from a VIN inspection and subsequent search warrant that revealed two firearms in Alderete's vehicle.  See Suppression MOO at 10-12.  Moreover, Alderete's criminal history is extensive.  See FOFs ¶¶ 13-14, 16, at 3-7. Alderete has been charged with criminal conduct twenty-five times, not including the current charges.  See FOFs ¶¶ 13-14, 16, at 3-7; Bail Report at 4-18.  Alderete also has a record of violating conditions of probation for prior criminal conduct.  See FOF ¶ 16, at 4-7.  In the Motion and at the April 23, 2020, hearing, Alderete offered no new evidence that necessitates release beyond arguing that COVID-19 heightens his health risks.  See Motion at 6; Tr. at 10:23-24 (Gagan).  While the Court is sympathetic to Alderete's health condition and his fear of COVID-19 infection, the risk of harm to a defendant only minimally impacts the Court's decision whether there is a condition or combination of conditions that will reasonably assure Alderete's appearance or the safety of the community.  Cf. United States v. Clark, 2020 WL 1446895, at *3 ("A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis . . . .").  Under 18 U.S.C. § 3142(g), the "judicial officer shall . . . take into account the available information concerning": (i) "the nature and circumstances of the offense charged"; (ii) "the weight of the evidence against the person"; (iii) "the history and the

characteristics of the person"; and (iv) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."   18 U.S.C. § 3142(g)(1)-(4). Alderete's health conditions only bear on the third § 3142(g) factor -- "the history and the characteristics of the person."   18 U.S.C. § 3142(g)(3).   The Court concludes however, that the United States' evidence against releasing Alderete is strong, and that Alderete has not produced evidence to overcome his burden of production, and to rebut the presumption that no condition or combination of conditions will reasonably assure his appearance or the safety of any other person or the community.   See 18 U.S.C. § 3142(e)(3)(B).   Accordingly, the original grounds for Alderete's detention weigh against release for a compelling reason under § 3142(i).[10]

> **B.   ALTHOUGH ALDERETE'S HEALTH CONCERNS MODERATELY INCREASE HIS RISK OF SEVERE ILLNESS FROM COVID-19, ALDERETE HAS NOT SHOWN THAT THE CIRCUMSTANCES AT THE SANTA FE DETENTION CENTER HEIGHTEN THIS RISK OR THAT THE SANTA FE DETENTION CENTER IS UNEQUIPPED TO TEND TO HIS HEALTH NEEDS AND CONTAIN A COVID-19 OUTBREAK, SHOULD ONE ARISE AT THE FACILITY.**

The second factor -- Alderete's health-related COVID-19 concerns -- gives the Court some pause, but it ultimately cuts against the determination that there is a compelling reason for Alderete's temporary release.   Alderete highlights the following health concerns as reasons for release: (i) he has had asthma since childhood; (ii) he has been hospitalized three times for asthma-related complications; and (iii) he is pre-diabetic, and jail medical staff regularly monitor his blood

---

[10]The Court further concludes, however, that, even if § 3142(e)'s rebuttable presumption is irrelevant to the compelling reason analysis under § 3142(i), the United States satisfies its burden of persuasion against release.   The United States has presented considerable evidence that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of the community.   The Court therefore concludes that the reasons that Alderete offers as compelling reasons for temporary release do not override, let alone counterbalance, Magistrate Judge Robbenhaar's findings that originally justified Alderete's pretrial detention.

sugar.  See FOF ¶ 17, at 7; Motion at 6.  Alderete also asserts that his family's circumstances necessitate his release.  See Motion at 6.  According to the Bail Report, Alderete was a laborer before 2018, but he suffered a hand injury two years ago while operating heavy machinery, and he now suffers from numbness in his hand and has a limited range of motion.  See Bail Report at 2; FOFs ¶¶ 11-12, at 3.  There is limited information available about COVID-19's risk factors for severe illness.  See FOF ¶ 34, at 10; CDC COVID-19 Risk Factors.  The CDC advises that, "[b]ased on currently available information and clinical expertise," people of any age are at a higher risk of severe illness from COVID-19 if they have any of the following health conditions or risk factors: (i) moderate to severe asthma; (ii) chronic kidney disease being treated with dialysis; (iii) chronic lung disease; (iv) diabetes; (v) hemoglobin disorders; (vi) compromised immune systems; (vii) liver disease; (viii) serious heart conditions; and (ix) severe obesity.  CDC COVID-19 Risk Factors.  See FOF ¶ 35, at 10-11.

Based on the current understanding of COVID-19's risk factors, Alderete's need for blood-sugar monitoring and limited range of motion do not put him at a higher risk of severe illness from COVID-19.  Furthermore, although Alderete says that he is "pre-diabetic" and mentions that his mother has diabetes, Motion at 6, he does not purport to have diabetes himself, and thus the Court determines that this health characteristic puts Alderete at a low, albeit non-trivial, risk of severe illness from COVID-19.  Thus, asthma is Alderete's most concerning health condition.

The Court concludes, however, that Alderete has not satisfied his burden of proof and demonstrated that his susceptibility to serious illness because of asthma is severe enough to constitute a compelling reason for temporary release.  See United States v. Sondergard, 2020 WL 195519, at *1; United States v. Clark, 2020 WL 1446895, at *2; United States v. Reese, 2012 WL 13080791, at *2.  Beyond Alderete's statement that he has been hospitalized for "asthma-related

complications," Motion at 6, he offers the Court no evidence indicating his asthma's severity or whether he currently is being treated for his asthma.  Moreover, New Mexico prisons have fared well during the COVID-19 pandemic compared to other States' prisons.  On May 17, 2020, the NM Political Report reported that "[j]ust one of the nearly 4,000 inmates and staff tested in the state's 11 prisons is positive for COVID-19."  NM Prisons' Low Positive Rate.  See FOF ¶ 46, at 14.  As for inmates held in federal custody, Governor Lujan Grisham reported on May 20, 2020, that two individuals have tested positive for COVID-19 at the Cibola County Correctional Center, thirty-eight individuals have tested positive at the Otero County Prison facility, sixty-two individuals have tested positive at the Otero County Processing Center, and one individual has tested positive at the Torrance County Detention Facility.  See Updated New Mexico COVID-19 cases: Now at 6,317; seven additional deaths, Press Releases (dated May 21, 2020), Office of the Governor Michelle Lujan Grisham, https://www.governor.state.nm.us/2020/05/20/updated-new-mexico-covid-19-cases-now-at-6317-seven-additional-deaths/ (last visited May 21, 2020); FOF ¶ 56, at 16.  One inmate at the Hidalgo County Detention Center has tested positive.  See Algernon D'Ammassa, Las Cruces Sun News (May 20, 2020), https://www.lcsun-news.com/story/news/local/2020/05/20/hidalgo-county-detention-center-inmate-diagnosed-covid-19/5225588002/ (last visited May 21, 2020); FOF ¶ 57, at 16.  On May 20, 2020, the U.S. Marshals Service for the District of New Mexico informed the Court via email that there are currently zero cases of COVID-19 at the Santa Fe Detention Center, where Alderete is detained. See FOF ¶ 58, at 17.  At the hearing, the United States said that, at the Santa Fe Detention Center, federal inmates are not segregated from state inmates.  See Tr. at 12:12-14 (Outler).  Inmates are "housed according to [a] risk assessment that the jail and the warden do when the inmate is coming in."  Tr. at 12:14-16 (Outler).  See FOF ¶ 48, at 14.  The United States says that the one inmate at

the Santa Fe Detention Center who had tested positive for COVID-19 is housed "in a low-risk pod, and that is a completely separate pod from where Mr. Alderete and every other federal holding inmate is being housed."  Tr. at 12:18-20 (Outler).  Moreover, "there is no commingling between the low-risk inmates where the positive case was and Mr. Alderete's pod," Tr. at 12:20-22 (Outler); FOF ¶ 51, at 15, and Alderete does not have any opportunities to interact with the one inmate who tested positive for COVID-19, see Tr. at 13:2-4 (Outler); FOF ¶ 50, at 15.  The United States argued that, "while it's certainly possible that there will be more positive cases, it's not automatically going to result in an uncontrollable outbreak within the jail population that will create a risk that must be avoided now."  Tr. at 13:8-12 (Outler).

The Court concludes that, although Alderete's asthma may -- depending on its severity -- place Alderete at higher-than-normal risk of severe illness, the remainder of his arguments about COVID-19's threat to inmates are too speculative to favor release.  At the hearing, Alderete contended that whether COVID-19 will affect inmates and detainees in New Mexico jails is not a "hypothetical" question.  Tr. at 8:23 (Gagan).  The United States countered that Alderete's characterization of the COVID-19 as a "question of not if, but when" is inaccurate.  Tr. at 13:20-22 (Outler).  Alderete cannot predict whether a COVID-19 outbreak will emerge at the Santa Fe Detention Center, and he has not demonstrated that the U.S. Marshals Service's measures to segregate inmates according to risk level are insufficient to mitigate his purported health risks.  See United States v. Clark, 2020 WL 1446895, at *6 ("[The defendant] cannot predict the extent to which COVID-19 cases might arise at the facility any more than many Americans can predict how they might be exposed to the virus.").  Furthermore, Alderete's generalizations based on how other countries' and States' inmate populations have endured the COVID-19 pandemic say nothing about the specific risks that Alderete himself faces.  Alderete notes that COVID-19 spread rapidly

throughout Chinese prisons at the pandemic's onset, see Motion at 4, that a geriatrician at Rikers Island, a state correctional facility in New York City, New York, advocated for decarceration of many inmates, see Motion at 4, and that COVID-19 spread rampantly throughout the Cook County jail in Chicago, Illinois, see Motion at 5. Alderete does not and cannot demonstrate, however, that New Mexico prisons will face a similar fate.

Alderete cites several recent cases in which district courts have released defendants because of the COVID-19 pandemic. Almost all of these cases, however, come from New York, California, Michigan, and Washington, D.C. -- places that have experienced much worse COVID-19 outbreaks than has New Mexico, other than the Navajo Reservation. See Cases in the U.S., CDC (last updated May 20, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited May 21, 2020). For example, Alderete cites United States v. Stephens, see Motion at 9, which, as the Court discusses above, is a case from the United States District Court for the Southern District of New York. There, Judge Nathan concluded that "the obstacles the current public health crisis poses to the preparation of the Defendant's defense constitute a compelling reason under 18 U.S.C. § 3142(i)." United States v. Stephens, 2020 WL 1295155, at *3. Judge Nathan noted:

> The spread of COVID-19 throughout New York State -- and the country -- has compelled the [Federal Bureau of Prisons] to suspend all visits -- including legal visits, except as allowed on a case-by-case basis -- until further notice. . . . This suspension impacts the Defendant's ability to prepare his defenses to the alleged violation of supervised release in advance of the [upcoming] merits hearing.

United States v. Stephens, 2020 WL 1295155, at *3 (citations omitted).

In New Mexico, however, although the New Mexico Corrections Department has suspended inmate visitation, "[p]hone call access has been increased in all facilities and inmates are being give one no cost call per week," Precautions NMCD is taking in response to the virus,

New     Mexico     Corrections     Department,     https://www.newmexico.gov/other-affected-services/corrections-department/ (last visited May 21, 2020); FOF ¶ 43, at 12-13, and the Santa Fe Detention Center offers video visitations with inmates, see Corrections Department, Santa Fe County, https://www.santafecountynm.gov/corrections/adultfacility (last visited May 21, 2020); FOF ¶ 44, at 13.  Alderete does not argue that the COVID-19 pandemic hinders his ability to prepare for his defense.  Consequently, the Court concludes that Alderete's specific circumstances and health concerns do not present a compelling reason for temporary release.

### C.   ALDERETE'S PROPOSED PLAN FOR TEMPORARY RELEASE DOES NOT MITIGATE SIGNIFICANTLY HIS RISK OF COVID-19 INFECTION.

Alderete's proposed conditions for his temporary release do not convince the Court that he will be at a lesser risk of COVID-19 infection if the Court temporarily releases him into his father's custody.  At the hearing, Alderete argued that temporary release from custody would enable him to care for his family.  See Tr. at 9:15-16 (Gagan).  Alderete' "mother has very serious underlying health conditions."  Tr. at 9:17-18 (Gagan).  See FOF ¶ 19, at 8.  Alderete said he would be able to help his parents care for his son, who is eleven years old.  See Tr. at 9:19-20 (Gagan).  Alderete added that travel restrictions, local stay-at-home laws, the closure of most business, and Pretrial Services' supervision "could ensure that he complies with any conditions this Court may impose."  Tr. at 10:6-8 (Gagan).  Alderete said that he would be "happy to wear electronic home monitoring equipment" and that his conditions of release could prohibit him from leaving his home except for essential errands, which is "the law right now in the State of New Mexico for us all."  Tr. at 10:9-14 (Gagan).  Alderete reiterated that "science and public health professionals are clear that limiting interactions amongst people is the number one way to stop spread of the virus at this time, and it's

simply not possible for people who are incarcerated to do that as effectively." Tr. at 10:17-21 (Gagan).

Although Alderete offers several reasons why he would stay at his father's home if the Court releases him, he offers no evidence to explain how living with his father and son mitigates his risk of COVID-19 infection. For example, Alderete does not address the risk of exposure that accompanies leaving his father's house to buy groceries, and other essentials for him, his father, and his son. Alderete notes that his father cares for his son, and, because his father has "his own underlying health conditions," his father is "afraid to shop for essentials and expose himself." Motion at 6. The Court thus presumes that Alderete would be the person who leaves his father's home to buy essentials. Leaving his father's house, however, would bring Alderete into contact with many people who might be infected with COVID-19. In contrast, if Alderete remains in custody, he would be detained with other individuals with similar health risks. In prison, he would not risk outside exposure to COVID-19 to the same degree that patronizing grocery stores and other essential businesses entails. Alderete also offers no information about his son's level of exposure or whether guests would visit his father's home. See United States v. McKnight, 2020 WL 1872412, at *4; United States v. Boatwright, 2020 WL 1639855, at *7; United States v. Lake, 2020 WL 1852435, at *3.

Furthermore, Alderete offers no evidence indicating that the Santa Fe Detention Center is less equipped to protect him from COVID-19 infection than the general social-distancing measures that he might follow outside of custody. The Santa Fe Detention Center has taken considerable efforts to mitigate its inmates' threat of COVID-19 infection. See FOF ¶ 45, at 13. The Santa Fe New Mexican reports:

Each inmate booked at the jail is screened outside for COVID-19 symptoms before entering the facility and faces a minimum 14-day isolation or quarantine period before entering the general population, [Warden Derek] Williams said.

Those showing no symptoms are housed in a separate unit, where their conditions are monitored.  If they show no symptoms at the end of the isolation period, they move to general population.  Those with symptoms are given an N95 mask before going inside the facility and are taken to an individual cell in a quarantine pod.

. . . .

Williams said crews have been keeping the jail clean. Cleaning crews and inmate porters disinfect and clean common areas each day, and the jail goes into lockdown two days a week to clean each cell and wipe down sinks and beds, as well as disinfect all surfaces, Williams said.

Supplies for hand-washing and cleaning are available, he added.  He denied allegations made by inmates in a recent Searchlight New Mexico story that reported the jail was not providing such supplies.

Amanda Martinez, No confirmed coronavirus cases at Santa Fe County jail as staff modifies procedures, Santa Fe New Mexican (dated April 3, 2020), https://www.santafenewmexican. com/news/coronavirus/no-confirmed-coronavirus-cases-at-santa-fe-county-jail-as-staff-modifies-procedures/article_bef64404-72d0-11ea-83d3-6f8c2d608c7d.html (last visited May 21, 2020). See FOF ¶ 45, at 13.  Alderete ignores how, if the Court temporarily released him, interactions with Pretrial Services and the "ongoing monitoring and supervision associated with any temporary release" could potentially expose him to COVID-19 infection.  United States v. McKnight, 2020 WL 1872412, at *4.  Additionally, Alderete "neglects the burden such relief would place on Pretrial Services."  United States v. Urban, Case No. 1:18CR750, 2020 WL 1862678, at *1 (N.D. Ohio April 14, 2020)(Boyko, J.).  In sum, the Court concludes that Alderete offers no more than speculation that being released into his father's custody would be less risky than remaining at the Santa Fe Detention Center.  See United States v. Lake, 2020 WL 1852435, at *3 ("Defendant has

not explained how his proposed release plan mitigates any danger to himself (other than removing

him from the [] facility) . . . of contracting the virus over the course of any temporary release.").

### D.   RELEASING ALDERETE COULD INCREASE OTHERS' RISK OF COVID-19 INFECTION.

Last, the Court considers the risk that Alderete might increase others' risk of COVID-19

infection.  This factor is especially significant given Alderete's past failures at complying with

conditions of release.  See United States v. Clark, 2020 WL 1446895, at *7 (noting that "it is also

appropriate to consider the likelihood that the defendant's proposed release plan would increase

COVID-19 risks to others, particularly if the defendant is likely to violate conditions of release").

In United States v. Clark, Judge Mitchell explains:

> A defendant who is unable to comply with conditions of release poses potential
> risks to law enforcement officers who are already tasked with enforcing shelter-in-
> place orders in many cities and counties, pretrial services officers who come into
> contact with the defendant for supervision, and others if that individual is taken
> back into custody.

United States v. Clark, 2020 WL 1446895, at *7.

As noted above, Alderete's criminal history is extensive -- he has been charged with

criminal conduct twenty-five times, not including the current charges, see FOFs ¶¶ 13-14, 16, at

3-7; Bail Report at 4-18, and he has a record of violating conditions of probation and parole for

prior criminal conduct, see FOFs ¶¶ 15-16, at 3-7.  Alderete argues that, if released temporarily,

he would not violate the Court's conditions of release, and he cites the following statistics as

support:

> Since 2009, Pretrial Services' data has found that only 2.9% of defendants in the
> highest risk category were re-arrested for a violent crime while on release.  In the
> District of New Mexico, the Pretrial Services Violations Summary Report for the
> 12-Month Period Ending September 30, 2018, of the 919 cases in release status,
> there were violations in only 14.6% of the cases, and only 33 failures to appear.
> There were zero rearrest violations for new crimes.

Motion at 11 (citing Thomas H. Cohen, Christopher T. Lowenkamp, & William E. Hicks, Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A Research Summary, 82 Federal Probation 23 (September 2018), https://www.uscourts.gov/sites/default/files/82_2_3_0.pdf (last visited May 20, 2020); Table H-15, U.S. District Courts -- Pretrial Services Violations Summary Report for the 12-Month Period Ending September 30, 2018, http://jnet.ao.dcn/court-services/probation-pretrial-services/caseload-tables/pretrial-services-h-tables-september-2018/pretrial-services-violations-summary-report (last visited May 20, 2020)). These statistics do not convince the Court that Alderete will abide by his conditions of release and not increase others' risk of COVID-19 infection.  Such general population statistics do not support the inference that Alderete -- who has a record of repeated probation and parole violations -- will not violate his conditions of release this time, and possibly leave his father's home, and contract and spread the disease that COVID-19 causes to others.  Furthermore, despite the increase in social distancing and the temporary business closures during the COVID-19 pandemic, Albuquerque's crime rate has not suddenly dropped.[11]  See Faith Egbuonu, City of Albuquerque addresses crime amid COVID-19 pandemic, KOB 4 (dated April 16, 2020), https://www.kob.com/new-mexico-news/city-of-albuquerque-addresses-crime-amid-covid-19-pandemic/5702518/ (last visited May 19, 2020); FOF ¶ 53, at 15.

Alderete's most particularized arguments as support why he will not violate his conditions of release and increase others' risk of COVID-19 infection are because "[h]e would be monitored by Pretrial Services" and because "he would seriously risk his health were he to violate social

---

[11]The Court notes that Albuquerque is approximately thirty miles north of Belen, the town where Alderete's father lives.

distancing requirements."  Motion at 10-11.  The Court concludes that these considerations do not

support release.  First, Alderete underestimates the risks to Pretrial Services that monitoring a high-

risk offender poses.

> [W]hen [the defendant] violates his conditions of release (as he likely will), law
> enforcement officers will be forced to expend valuable resources during a national
> crisis to take him back into custody . . . , both increasing the risk to them of
> contracting and spreading COVID-19 and further increasing the risk to the prison
> population when he inevitably returns to the facility.

United States v. Clark, 2020 WL 1446895, at *7.  Alderete says that he "can be regularly monitored

by electronic monitoring equipment, and his movements would be limited to essential tasks

only -- per order of the Court and per current stay-at-home restrictions in New Mexico."  Motion

at 11.  This monitoring does not mean, however, that Alderete would be unable to violate his

conditions of release, or to contract and spread the disease that COVID-19 causes.   As the

Honorable Paul W. Grimm, United States District Judge for the United States District Court for

the District of Maryland, has observed:

> While the location monitoring that [the defendant] proposes may offer useful
> information about where he is, it provides little useful information about what he is
> doing, and the ready accessibility of smart phones and digital communication
> devices would make it all too easy for him to resume his involvement (directly or
> through confederates) in the distribution of controlled substances without detection.
> Moreover, location monitoring is not a limitless resource, nor is its installation and
> monitoring by United States Pretrial Services officers without risk to those
> personnel (who must be trained and certified to install location monitoring) given
> the current recommendations regarding implementation of social distancing.

United States v. Martin, Criminal Case No. PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md.

March 17, 2020)(Grimm, J.).  Thus, the Court concludes that location monitoring by Pretrial

Services does not guarantee that Alderete will not violate the conditions of his release and increase

others' risk of COVID-19 infections.

Second, the State of New Mexico's stay-at-home order and social-distancing guidelines do not prevent Alderete from leaving his father's house and increasing others' risk of COVID-19 infection. Alderete has indicated that he would likely buy groceries and essentials for himself, his father, and his son upon release, which would expose him to COVID-19 infection, and, if he were to contract the disease, his outings would expose others to COVID-19 infection. Moreover, the Court sees no reason to believe that the stay-at-home order and social-distancing guidelines would stop Alderete from leaving his father's home for other reasons. Given Alderete's record of violating probation to commit crimes, the Court is not convinced that Alderete would not also violate the stay-at-home order and social-distancing guidelines to do the same, and, consequently, risk contracting and spreading the disease that COVID-19 causes. Thus, the Court concludes that temporarily releasing Alderete would increase others' risk of COVID-19 infection, and, upon potential return to the U.S. Marshals Service's custody, would increase inmates' and prison staff's risk of COVID-19 infections. Alderete has not established that COVID-19's impact on his risk of serious illness while being detained is a compelling reason for temporary release based on his health condition. Accordingly, if the Court has authority to order temporary release under § 3142(i), the Court would deny Alderete's request.

**IT IS ORDERED** that the Defendant's Urgent Motion for Release Due to Coronavirus Outbreak, filed April 8, 2020 (Doc. 44), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
    United States Attorney
Samuel A. Hurtado
Thomas A. Outler
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Mallory Margaret Gagan
    Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

       *Attorney for the Defendant*